**GEORGIA ASSOCIATION OF RETARDED CITIZENS, et al., Plaintiffs–Appellants,**

**v.**

**Dr. Charles McDANIEL, et al., Defendants–Appellees.**

No. 86–8582.

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1988.

Phyllis J. Holmen, Georgia Legal Services Program, Jonathan A. Zimring, Atlanta, Ga., for plaintiffs-appellants.

Griffin B. Bell, Jr., Fisher· & Phillips, Lawrence S. McGoldrick, Alfred L. Evans, Jr., Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before FAY and CLARK, Circuit Judges, and GUIN *, District Judge.

CLARK, Circuit Judge:

All the issues in this appeal concern the district court's conclusion that an award of costs pursuant to Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 does not bear interest. Although there is conflicting law in the Eleventh Circuit on this question, we conclude that when a district court awards costs to a prevailing party, the award bears interest from the date of judgment.

---

* Honorable J. Foy Guin, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

## I.

This lawsuit was filed in 1978 to redress alleged violations of the Education for the Handicapped Act ("EHA"), 20 U.S.C. § 1401 *et seq.* and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. In an order dated April 3, 1981, the district court granted various forms of declaratory and injunctive relief to the plaintiffs. *Georgia Association of Retarded Citizens v. McDaniel,* 511 F.Supp. 1263 (N.D.Ga. 1981). A panel of this court affirmed the district court's judgment, 716 F.2d 1565 (11th Cir.1983). The Supreme Court vacated our judgment and remanded the case in light of its decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). *See McDaniel v. Georgia Association of Retarded Citizens,* 468 U.S. 1213, 104 S.Ct. 3581, 82 L.Ed.2d 880 (1984). In *Smith,* the Court held that a plaintiff asserting a valid claim under the EHA could not (1) seek attorney's fees under 42 U.S.C. § 1988 nor (2) proceed simultaneously under the Rehabilitation Act and seek attorney's fees thereunder. On remand, we modified our opinion so as to correct a statement regarding the availability of attorney's fees and to make clear that it affirmed only that portion of the district court's judgment granting relief under the EHA. 740 F.2d 902, 903 (11th Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 365 (1985).

After the district court rendered its first judgment in 1981, the plaintiffs filed a motion for costs and attorney's fees. Upon motion by the local defendants, the district court stayed ruling upon the motion for costs and fees pending the completion of the appellate process. After remand, in an order dated August 19, 1985, the district court denied the motion for attorney's fees[1] and awarded $10,802.13 in itemized costs. On November 27, 1985, the district court modified its order awarding costs so as to delete $5,328.50 in expert witness fees taxed against the defendants. The plaintiffs were directed to submit a revised bill of costs showing the amount of expert witness fees which could be properly taxed under 28 U.S.C. § 1920. On January 23, 1986, upon consideration of the plaintiffs' revised bill of costs, the district court issued an order awarding $6,067.63 in costs. The court also declared that the cost award was to bear interest from the date of judgment. The defendants then moved for reconsideration, arguing that the law of this circuit prohibited interest on awards of costs. The district court was persuaded to the defendants' point of view; on June 27, 1986, it struck that portion of its January 23 order that had allowed interest on the cost award.

## II.

Although the question of whether litigation costs are interest-bearing is of tremendous importance in the daily management of litigation, this court in its predecessor form transmitted substantially conflicting signals on the matter.

In *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316 (5th Cir.1978), the court adhered to the "traditional view that costs do not bear interest" and held that a district court erred in awarding interest on attorney's fees since the governing statute (the Clayton Act, 15 U.S.C. § 15) denominated fees as part of costs. *Id.* at 1322 (citing *Duffer v. American Home Assurance Co.,* 512 F.2d 793 (5th Cir.1975)).

This rule of law remained undisturbed until the court decided *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980) (*"Gates I"*). In *Gates,* the district court awarded post-judgment interest on attorney's fees and out-of-pocket costs pursuant to the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988 ("section 1988"). Like the Clayton Act, section 1988 makes attorney's fees part of costs. A panel of this court found *Carpa* to be distinguishable and upheld the award of interest on attorney's fees. The panel also held, however, that it was error to award interest on out-of-pocket costs. 616 F.2d at 1279 & n. 17 (citing *Carpa; Duffer*).

---

1. The availability of attorney's fees in this case is the subject of a separate appeal. *See Georgia Association of Retarded Citizens v. McDaniel,* No. 86–8586 (11th Cir.) (argued March 8, 1988).

Judge Hill dissented. Although he acknowledged that equitable considerations weighed in favor of the rule adopted by the majority, he opined that *Carpa* "prevent[ed] the court] from allowing interest on any part of costs," including attorney's fees. 616 F.2d at 1281 (Hill, J., dissenting). The dissent also disputed the majority's conclusion that section 1988 and its legislative history supported disparate treatment of out-of-pocket costs and attorney's fees awarded as part of costs. *Id.* at 1282.

The panel revisited the matter when the appellees petitioned for rehearing. In granting the petition for rehearing, the panel majority reversed itself on the question of interest on out-of-pocket costs. It agreed with Judge Hill that, with respect to interest, no principled distinction could be drawn between out-of-pocket costs and attorney's fees awarded as costs. Thus it concluded that both types of costs were to bear interest. The panel summarized the disagreement among the judges as follows:

> The majority, for reasons set forth in Judge Hill's dissent, is now convinced that it was in error in distinguishing between so-called out of pocket costs, on the one hand, and attorney's fees on the other.

> The result is that, while the Court remains divided on whether *Carpa* has to be overruled to permit interest on attorneys fees all are in agreement that out of pocket costs and attorneys' fees, now including all court costs, are to be treated alike with respect to interest.

*Gates v. Collier*, 636 F.2d 942, 942–43 (5th Cir.1981) (per curiam) ("*Gates II*") (footnotes omitted).

After *Gates II* appeared, a majority of the active judges on the former Fifth Circuit failed to vote the case en banc. Judge Hill dissented from the full court's refusal to act. In reiterating the views regarding *stare decisis* he expressed in *Gates I*, Judge Hill wrote,

Without full court action, one panel has reached a desirable result; it has done so in defiance of a prior panel holding; and our court now has, outstanding, one case holding that costs awarded in litigated cases *do not bear interest*, [*Carpa*], and this case holding that all costs (including attorneys' fees) *do bear interest*. Each case appears to state the law of the Fifth Circuit on this important issue. . . .

\* \* \* \* \* \*

[By failing to vote the case en banc], the entire court has declined to consider overruling *Carpa* and has declined to rehear this case, leaving both as the conflicting law of the Fifth Circuit.

*Gates v. Collier*, 641 F.2d 403, 403–04 (5th Cir.1981) (Hill, J., dissenting from denial of petition for rehearing en banc) (emphasis in original) (*Gates III*).

### III.

In concluding that the costs awarded in this case were not interest-bearing, the district court cited *Carpa* and *Gates I.* In light of the discussion above, the district court's reliance on *Carpa* is understandable. Less understandable is its reliance on *Gates I,* in which, according to the district court, "the Fifth Circuit again held that interest on costs is not awardable." Record, Vol. 10, Tab 1774 at 2. As is clear from our discussion of *Gates II,* the panel in *Gates I* reversed itself on this point. The district court omitted any mention of *Gates I*'s subsequent history.

The parties in turn have advanced various theories as to why either *Carpa* or *Gates II* controls the disposition of this appeal. In particular, the plaintiffs argue that the rule in *Carpa* is limited to antitrust cases, while the defendants would have the court restrict the application of *Gates II* to civil rights cases. After carefully examining both these decisions, we have concluded that the nice distinctions urged by the parties cannot be sustained.[2]

---

**2.** In *Carpa,* we did say that the traditional rule might not apply to cases in which the policies behind a given cost-shifting statute would be best-served by allowing interest. In particular, we said that the language and history of a given statute might suggest that its purpose would be advanced by allowance of interest. 567 F.2d at 1323. But there is little to suggest that the court

In addition, we cannot accept the plaintiffs' invitation to infer that a majority of the former Fifth Circuit judges expressed approval of the result reached in *Gates II* when they failed to vote the case en banc. *Cf. Washington Mobilization Committee v. Jefferson,* 617 F.2d 848, 850 (D.C.Cir. 1980) (in opinion explaining reasons for declining to vote for rehearing en banc, circuit judges did not purport to "reverse" panel decision); *State of Maryland v. Baltimore Radio Show, Inc.,* 338 U.S. 912, 919, 70 S.Ct. 252, 255, 94 L.Ed. 562 (1950) (Supreme Court denial of petition for certiorari is of no precedential value).

We have concluded, as did Judge Hill in his *Gates III* dissent, that *Carpa* and *Gates II* contain conflicting rules of law. Yet both decisions are binding on this court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (in banc) (former Fifth Circuit decisions handed down prior to September 30, 1981 are binding precedent in the Eleventh Circuit); *id.* at 1209 (panel decision may be overruled only by the court sitting en banc).

Although they are to be avoided, intra-circuit conflicts are by no means novel. The court has, by necessity, developed rules which govern the choice among conflicting precedents. The principles directing this choice were well summarized in *Dorse v. Armstrong World Industries,* 798 F.2d 1372, 1376 (11th Cir.1986):

> Where circuit authority is in conflict, "we ordinarily reject the precedent that is inconsistent with either Supreme Court cases or the weight of authority within the circuit." *United States v. Hobson,* 672 F.2d 825, 827 (11th Cir.1982). *See also United States v. Gort,* 737 F.2d 1560[, 1564] (11th Cir.1984); *Manufacturing Research Corp. v. Graybar Electric Co.,* 679 F.2d 1355[, 1360 n. 12] (11th Cir.1982); *Gresham Park Community Organization v. Howell,* 652 F.2d 1227 [, 1235] (5th Cir.1981). Where there is no Supreme Court authority on the issue and no clear weight of authority within the circuit, however, "we must resort to common sense and reason" to determine the appropriate rule of law. [*Hobson* ], 672 F.2d at 825.

intended to limit *Carpa* to antitrust cases. There is some suggestion in *Carpa* that the availability of treble damages in a private antitrust action makes an interest allowance unnecessary. This was offered, however, as a reason for not deviating from the "traditional" rule. *See* 567 F.2d at 1322–23 & n. 5.

The *Gates I* majority opinion does contain a lengthy discussion of the purposes behind section 1988. And it does say that an award of interest on *attorney's fees* is consistent with the purposes of section 1988. The majority offered no direct support for its conclusion; instead it wrote, *"we do not believe Congress intended to bar recovery of interest on attorney's fees."* 616 F.2d at 1275 (emphasis added). To the extent that the *Gates I* majority did rely on the purposes of section 1988 in reaching its decision, much of this reasoning evaporated when the majority reversed itself on the question of out-of-pocket costs in *Gates II.* To illustrate, we note that in *Gates I,* the majority wrote,

> [T]he legislative history of § 1988 emphasizes the need in civil rights cases for adequate *attorneys' fee* awards. On the other hand, *there is nothing in the legislative history of § 1988 which even remotely suggests that the treatment of out-of-pocket costs should in any way change as a result of the enactment of § 1988.* While we sympathize with Appellees' claim for interest on costs, we believe that

> Congress must provide at least some indication of its intent to abrogate the traditional rule against awarding interest on out-of-pocket costs, or at least express a strong and clear intent that costs, like attorneys' fees, must be liberally awarded to ensure effective enforcement of the civil rights laws.

616 F.2d at 1279 n. 17 (emphasis added). When the *Gates II* majority decided that out-of-pocket costs and attorney's fees were to receive identical treatment, it necessarily retreated in part from its conclusion that section 1988 or its history supported the decision to allow interest. The only way to make sense of the panel's action is to conclude that, to the extent it relied on section 1988's purpose and history, it concluded only that "Congress [did not] intend[ ] to bar recovery of interest on attorney's fees," 616 F.2d at 1275, as well as costs. When the new Fifth Circuit undertook to overrule *Carpa,* this is the manner in which it interpreted *Gates II. See Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 543 (5th Cir.1983) (en banc) (per curiam) (*Gates II* held that section 1988 *"allows* interest on costs and attorney's fees").

To see that the *Gates II* panel was adopting a more general rule regarding interest allowances, one should examine footnote 1 in *Gates II,* where it notes, as did Judge Hill in his *Gates I* dissent, that " 'most federal courts have found no barrier to awarding interest on costs.' " 636 F.2d at 942 (quoting 616 F.2d at 1283).

*See also Kent v. Baker,* 815 F.2d 1395, 1399 (11th Cir.1987).[3]

Adhering to these general principles, we have concluded that *Gates II* furnishes the appropriate rule of law.[4] There is no controlling or persuasive Supreme Court decision. In addition, it cannot be said that the weight of circuit authority acts as an absolute trump. Since *Carpa* was decided, and since the *Gates* trilogy appeared, the court has been virtually silent on the question at hand. There are indications, however, that the rule in *Carpa* has lost its vitality. On at least two occasions, the court has suggested that a district court might cure the delay in an award of attorney's fees—made part of "costs" by statute—by awarding interest. *See Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1138 (11th Cir. 1984) (Wisdom, J.) (42 U.S.C. § 2000e–5(k); district court should consider awarding interest on remand); *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1210–11 (11th Cir.) (Roney, J.) (42 U.S.C. § 2000e–5(k); because delay in payment dilutes award, "district courts should take into account inflation and interest"), *cert. denied,* 464 U.S. 494, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). Yet under *Carpa,* such adjustments would be prohibited.

In deciding to follow the *Gates II* rule, we are most persuaded by the fact that it "better serve[s] the purpose of awarding these expenses to the prevailing party since it ... more nearly compensate[s] the victor for the expenses of litigation." *Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 544 (5th Cir.1983) (in banc) (per curiam). As the *Gates I* majority explained,

the awarding of interest is in no sense a windfall. Because a dollar today is worth more than a dollar in the future, "the only way [a party] can be made whole is to award him interest from the time he should have received the money." *Louisiana & Arkansas Railway Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir.1966).

616 F.2d at 1276. We note that the "traditional rule" applied in *Carpa* "antedates the modern practice of applying economic and business principles to judicial administration. ... It developed at a time when interest rates were not so high nor costs so large as both now are, and when therefore, the net effect of the disallowance was smaller." *Copper Liquor,* 701 F.2d at 544, *quoted in Devex Corp. v. General Motors Corp.,* 749 F.2d 1020, 1026 (3d Cir.1984), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985).

It merits mention that outside this circuit, the question of interests on costs is hardly controversial. The overwhelming weight of federal authority permits the addition of interest to cost awards. As Judge Hill indicated in his *Gates I* dissent, "[o]utside this Circuit, there is no authority supporting ... a holding" "that costs do not bear interest." 616 F.2d at 1283. *See, e.g., Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 927 (3d Cir. 1985) (interest on section 1988 fees); *Devex Corp. v. General Motors Corp.,* 749 F.2d 1020, 1026 (3d Cir.1984) (interest on nonstatutory costs), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *R.W.T. v. Dalton,* 712 F.2d 1225, 1234–35 (8th Cir.) (interest on section 1988 fees and costs), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Spain v. Mountanos,* 690 F.2d 742, 747–48 (9th Cir.1982) (interest on section 1988 fees); *City of*

---

3. One panel has also suggested that the court may resolve a conflict by following the earlier of two inconsistent cases. *See Kent v. Baker,* 815 F.2d 1395, 1399 n. 3 (11th Cir.1987), (citing *Robinson v. Tanner,* 798 F.2d 1378, 1383 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987)). Even when a panel does decide to follow the earlier of conflicting decisions, it does not do so without considering the merits of its choice. *See Robinson,* 798 F.2d at 1383 (explaining reasons for choice among conflicting decisions).

4. We note that the new Fifth Circuit, sitting en banc, undertook to overrule *Carpa* in 1983. *See Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542 (5th Cir.1983) (per curiam). This does not create a presumption, as the State defendants argue, that a panel of this court cannot follow *Gates II* until *Carpa* is overruled by this court, sitting en banc. Even the Fifth Circuit in *Copper Liquor* recognized that the result it reached (i.e. awards of costs do bear interest) was "consistent with the result ... reached in *Gates [II]*." 701 F.2d at 543.

*Detroit v. Grinnell Corp.,* 575 F.2d 1009 (2d Cir.1977) (interest on non-statutory fees and costs)[5]; *Perkins v. Standard Oil Co. of California,* 487 F.2d 672, 674–76 (1973) (interest on fees awarded under the Clayton Act); *Harris v. Chicago Great Western Ry. Co.,* 197 F.2d 829, 836 (1952) (interest on non-statutory costs and fees).

## IV.

We conclude that when a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment. *See Perkins,* 487 F.2d at 676; *Copper Liquor,* 701 F.2d at 545; *R.W.T.,* 712 F.2d at 1234–35; *Institutionalized Juveniles,* 758 F.2d at 927. *But see Harris,* 197 F.2d at 835 (allowing interest from date of revised judgment). Where, as here, an award of costs is modified by the district court, interest on the revised award should run from the date of the original award "because that is the date on which the correct judgment should have been entered." *Perkins,* 487 F.2d at 676. *Cf. Peyton v. Brooke,* 7 U.S. (3 Cranch) 92, 95, 2 L.Ed. 376 (1805) (judgment for costs "includes all costs belonging to the suit, whether prior, or subsequent to the rendition of judgment. If new costs accrue, the judgment opens to receive them.")

The State defendants note that there is no statute expressly providing for allowance of interest or costs. In addition, they note that the federal statute describing a court's duty to award interest, 28 U.S.C. § 1961(a), refers to "money judgment[s]." Thus, they argue that a district court is powerless to allow interest on costs in a case where only equitable relief is sought. We reject the State defendants' arguments for a number of reasons. The distinction the defendants wish to draw between an action for damages and one for equitable relief is incompatible with the formal merger of law and equity brought about by the Federal Rules of Civil Procedure. *See, e.g.,* Fed.R.Civ.P. 2. ("There shall be one form of action to be known as 'civil action.' ").[6] To make it clear that actions for damages and equitable relief are not to be treated differently for purposes of taxing costs, 28 U.S.C. § 1920 requires that "[a] bill of costs ... upon allowance, be included in the *judgment or decree.*" Prior to the advent of the Federal Rules of Civil Procedure, "in the absence of a statutory provision, ... the prevailing party in an action of law was entitled to costs as of right; while in equity the allowance of costs to either party was the subject of the court's discretion." 6 *Moore's Federal Practice* ¶ 54.70[3] (1988) (footnotes omitted); *see also Ex Parte Peterson,* 253 U.S. 300, 317–18, 40 S.Ct. 543, 549, 64 L.Ed. 919 (1920).

"As a general rule, taxable costs are considered full compensation to a prevailing party for the expense of conducting litigation even though such costs are only nominal and wholly inadequate." *Vars v. International Brotherhood of Boilermakers,* 215 F.Supp. 943, 952 (D.Conn.), *aff'd,* 320 F.2d 576 (2d Cir.1963). Inasmuch as the obvious purpose of imposing litigation costs upon losing parties is to relieve the prevailing party from at least a portion of the total expense of litigation, *see Hutto v. Finney,* 437 U.S. 678, 695 n. 24, 98 S.Ct. 2565, 2576 n. 24, 57 L.Ed.2d 522 (1978), that purpose is advanced by an allowance of interest.

Finally, we note that the distinction urged upon us by the State defendants has been implicitly rejected by those cases following *Perkins* in which the prevailing parties obtained no form of monetary relief.

---

5. This opinion in *City of Detroit* does not indicate the source of the award of attorney's fees and costs. Prior history of the case, however, reveals that the award was based on the "equitable fund" doctrine. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2d Cir.1974).

6. As Professor Moore has explained:
   A slightly more detailed statement of Rule 2 would read:

   All procedural distinctions between actions at law and suits in equity and in the forms of action and practice and procedure thereof are abolished, and hereafter there shall be only one form of civil action.
   2 *Moore's Federal Practice,* ¶ 2.02[1] at 2–3 (1988).

*See R.W.T.*, 712 F.2d at 1234–35; *Institutionalized Juveniles*, 758 F.2d at 927 (3d Cir.1985). *See also Devex Corporation*, 749 F.2d at 1026 (dictum) ("rationale behind modern trend awarding interest is unrelated to the type of case involved").

The defendants contend that one of the principal justifications for awards of interest, namely, the guarantee of prompt payment, is lacking in this case since the district court did not determine the amount of costs due until more than four years had elapsed since the district court's judgment. Thus, they believe it is unfair to hold them responsible for interest on any amount which remained unliquidated until 1985. The defendants' argument suggests that an award of interest acts as a penalty, but as we have explained, an award of interest serves the same purpose as an award of costs—relief for the prevailing party from the expense of litigation. In any event, the district court's delay in resolving the question of costs was due to the local defendants' successful attempt to stay the motion for costs pending appeal. Although the State defendants were not directly responsible for this delay, they have benefited from it. Moreover, as complete players in this litigation, the State defendants have certainly contributed to the length of the delay. If equitable considerations militated against an award of costs vis-a-vis either losing party, they were due to be addressed through the district court's discretionary

power to deny or apportion costs,[7] not by disallowing interest on the cost award.

■ One final point requires discussion. The State defendants contend that an award of "retroactive" interest is barred by the Eleventh Amendment.[8] They concede that the federal courts have the power to tax costs against the States, even in the absence of a statutory provision that contains an express waiver of the States' immunity. *See Hutto*, 437 U.S. at 696–98, 98 S.Ct. at 2576–77. For the purposes of the Eleventh Amendment, we see no reason for distinguishing between actual costs and interest on those costs that results from a lengthy appellate process.[9] *But cf.* 28 U.S.C. § 2516(a) (interest on claim against United States permitted only under contract or by Act of Congress). A federal court has the power to tax costs against the States in the same manner as it taxes costs against other litigants. *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927). Because "an award of costs does not compensate the plaintiff for the injury that first brought him into court," such an award does not violate the Eleventh Amendment's proscription against awards of "retroactive" relief against the State. *Hutto*, 437 U.S. at 695 n. 24, 98 S.Ct. at 2596 n. 24.

### V.

For the reasons expressed herein, we VACATE the district court's June 27, 1986

---

7. *See generally* C. Wright, A. Miller & M. Kane, 10 *Federal Practice and Procedure* § 2668 (1983); 6 *Moore's Federal Practice* ¶ 54.70[5] (1988).

8. The plaintiffs suggest the court should ignore this argument because the State defendants did not raise it before the district court. A reading of the record reveals that this issue was properly raised before the district court. *See* Record, Vol. 10, Tab 1770 at 12. Even if the state defendant had failed to raise this issue, we could consider it for the first time on appeal. It is well established that the Eleventh Amendment "sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). "The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this [c]ourt will consider the issue arising under this Amendment ... even though urged

for the first time in this [c]ourt." *Ford Motor Co. v. Dept. of Treasury of State of Indiana*, 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945).

9. The Supreme Court's recent Eleventh Amendment decisions, cited by the State defendants, do not support the proposition that the Constitution bars allowances of interest on litigation costs taxed against the States. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (Rehabilitation Act, 29 U.S. § 794, does not abrogate Eleventh Amendment immunity; State's receipt of federal funds does not amount to consent to suit in federal court); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (federal court cannot order State officials to conform conduct to State law); *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) (Eleventh Amendment bars injunctive actions against the States).

order deleting the allowance of interest on the costs taxed against the defendants. The case is REMANDED so that the district court may proceed in a manner consistent with this opinion and 28 U.S.C. § 1961.

VACATED and REMANDED.