Earl J. REOPELL, Plaintiff, Appellant,

v.

COMMONWEALTH OF MASSACHU-SETTS, Defendant, Appellee.

No. 90–1989.

United States Court of Appeals, First Circuit.

Heard Feb. 4, 1991.

Decided June 18, 1991.

---

**32.**  424 U.S. at 609, 96 S.Ct. at 1080, 47 L.Ed. at 275.

**33.**  872 F.2d 507 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).

Jonathan R. Siegel, Appellate Staff, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Wayne A. Budd, U.S. Atty., and Michael Jay Singer, Appellate Staff, Civ. Div., Dept. of Justice, were on brief, for plaintiff, appellant.

Douglas H. Wilkins, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., was on brief, for defendant, appellee.

Before CAMPBELL, Circuit Judge, ALDRICH, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Earl J. Reopell, whose rights under the Veteran's Reemployment Rights Act (VRRA), 38 U.S.C. § 2021 *et seq.*, were violated by the Commonwealth of Massachusetts, appeals from the denial of prejudgment interest on the compensation awarded to him by the district court. The only issue is whether, as part of compensatory damages under the VRRA, states found to have violated the VRRA and held liable for back pay and other damages may also, consistent with the Eleventh Amendment, be charged with prejudgment interest on the award. Recent Supreme Court pronouncements persuade us that a state should be so charged with interest in these circumstances.

## I.

The facts are not in dispute: In 1983 Earl J. Reopell was a Massachusetts State Police Trooper. State Police Regulation 10.83, then in force, provided that "[m]embers of the Uniformed Branch are prohibited from joining any federal or state military organization without permission of the Commissioner, except that the Massachusetts National Guard may be joined without written permission." On November 10, 1983, Reopell sought the Commissioner's permission to join the United States Army Reserve. Permission was denied, but Reopell nonetheless enlisted in the Army Reserve on December 15, 1984. On or about January 1, 1985, he informed his superior

officer in the State Police, Captain Gilman, of his enlistment. In March 1985, Captain Gilman informed Reopell that charges were being drawn against him for violation of Massachusetts State Police Regulations 10.83 and 10.21 (disobeying orders). Reopell waived his right to a hearing and accepted as punishment a thirty-day suspension without pay. Captain Gilman also ordered Reopell to resign from the Army Reserve. Reopell was suspended without pay for the thirty-day period beginning April 30, 1985. As a result, he lost pay and also vacation time, sick leave, and seniority.

Reopell, represented by the United States Attorney General, brought an action in the district court against the Commonwealth of Massachusetts. The court found that the Commonwealth had violated Reopell's rights under the VRRA. The parties thereupon stipulated to the entry of a judgment providing that Reopell would be paid $3,260.41 on account of wages lost because of his suspension; would be credited with lost vacation; and would have his seniority restored. The Massachusetts State Police were also directed to rescind and declare null and void the order requiring Reopell to resign from the Army, and were to publish a comprehensive order to the effect, *inter alia,* that the court had found such policies to violate the VRRA and had enjoined them. The case was thus settled at the remedy stage by agreement on all matters except one.

The one disputed issue remaining was whether Massachusetts should be ordered to pay prejudgment interest to Reopell on the monetary award. The parties stipulated that if an award of interest were appropriate, the amount due would be $1,788.01 as of February 28, 1990, with further interest at a rate of 8%. The parties each moved for summary judgment on the question of interest. Massachusetts insisted that its Eleventh Amendment immunity prohibited the court from directing it to pay interest to Reopell.[1]

---

1. The Commonwealth relies on *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39

L.Ed.2d 662 (1974) ("[a] suit by private parties seeking to impose a liability which must be paid

In a September 7, 1990 Memorandum and Order, the district court granted the Commonwealth's motion for summary judgment and denied Reopell's motion. The court concluded that, although pre-judgment interest "was properly awarded under the Act, in the interest of reimbursing the veteran" (citing cases awarding interest under the VRRA against private employers), the Eleventh Amendment precluded the recovery of prejudgment interest from a state in similar cases.

On appeal, Reopell argues that the Veteran's Reemployment Rights Act itself plainly abrogates the states' Eleventh Amendment immunity against payment of retroactive compensation for violation of the Act. He contends that once Congress has so abrogated a state's Eleventh Amendment immunity by an unequivocally clear statement, a court need only be satisfied that interest is payable on the underlying award under ordinary principles in order to permit the inclusion of interest in the overall award against the state. Under this theory, interest may be imposed here notwithstanding the Eleventh Amendment, since the Veteran's Reemployment Rights Act, as customarily interpreted, implies the addition of prejudgment interest to a compensatory award in order to make the injured reservist or veteran whole.

Massachusetts responds that abrogation of the Commonwealth's Eleventh Amendment immunity against payment of interest can occur only as the result of an unequivocal statutory statement pertaining specifically to interest. Congress, the Commonwealth points out, did not in so many words abrogate the states' Eleventh Amendment immunity *against interest awards* under the VRRA.

## II.

While seemingly minor, this dispute takes on a serious cast because it is in an area that currently divides the Supreme Court, and as to which the Court's opinions provide unsteady guidance. There are really two related questions: (1) whether an award of back pay and related monetary damages is ever recoverable under the VRRA from a state (absent agreement, as here) given the Eleventh Amendment; (2) if recoverable, is prejudgment interest thereon recoverable. Reversing logical order, we turn first to the recoverability of interest.

■ In 1986 the Supreme Court addressed the question of when and whether *the United States* is subject to payment of prejudgment interest on awards against it. In *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Court held that although interest on attorney's fees is recoverable in a Title VII action against a private employer, it is not recoverable when the defendant is the United States.[2] The Court relied on the traditional "no-interest rule," under which the "sovereign" is immune from an award of interest except to the extent that it has separately waived its immunity against interest. The Court held that Congress' general waiver of immunity from suit is not sufficient to waive immunity from interest, because interest is an element of damages separate from damages on the substantive claim. 478 U.S. at 314, 106 S.Ct. at 2961. Following the Court's decision in *Shaw*, this circuit has suggested that the "no-interest rule" also applies, at least to some degree, to actions against states, which are shielded by sovereign immunity under the Eleventh Amendment. *WJM, Inc. v. Massachusetts Department of Public Welfare*, 840 F.2d 996, 1006 (1st Cir.1988); *Rogers v. Okin*, 821 F.2d 22, 26–28 (1st Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988). While expressing some dissatisfaction in *Rogers*,

---

from public funds in the state treasury is barred by the Eleventh Amendment.")

2. In *Shaw*, the plaintiff prevailed against the federal government in a race discrimination suit under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* He sought and obtained an award of attorney's fees in the district court, with an upward adjustment of 30% to compensate for delay in payment. The court held that the upward adjustment was equivalent to an impermissible award of interest upon the attorney's fees. 478 U.S. at 321–323, 106 S.Ct. at 2695–66.

821 F.2d at 28, we concluded in light of *Shaw* that the Eleventh Amendment forbade prejudgment interest on a belated attorney's fee award made under 42 U.S.C. § 1988 against a state. Since *Shaw*, it has been our view that an award of prejudgment interest against a state is invalid unless the state itself has waived its immunity with respect to such an award, or Congress has expressly indicated its intention to subject states to this element of damages. *WJM, Inc.*, 840 F.2d at 1006.

Recent Supreme Court developments, however, require us to reexamine our position. In 1989, the Supreme Court considered whether the Eleventh Amendment prohibited the enhancement of an attorney's fee award against a state to compensate for delay in payment. *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). The court held it did not, primarily on the ground that attorneys' fees were not retroactive payments barred by the Eleventh Amendment. In a footnote, however, Justice Brennan, writing for five justices, expressly limited the Court's holding in *Shaw* to the "special 'no-interest rule' ... applicable to the immunity of the United States...." 109 S.Ct. at 2468, note 3. The footnote went on to deny the "existence of an equivalent rule relating to state immunity that embodies the same ultra-strict rule of construction for interest awards that has grown up around the federal no-interest rule." *Id.* Significantly, in her dissent joined by only two other justices, Justice O'Connor cited approvingly this circuit's decision in *Rogers v. Okin*, wherein we extended the no-interest rule mentioned in *Shaw* to the states. *Jenkins*, 109 S.Ct. at 2475. While footnote 3 in *Jenkins* is arguably dicta, and while it is by no means clear that the dispute in the Supreme Court over the reach of the Eleventh Amendment has been finally resolved, a circuit court is not at liberty to turn its back on the Court's majority pronouncements. That the dissent took issue with the footnote, serves only to strengthen the latter by reducing the likelihood that the five justices overlooked the language of the footnote when signing on. We believe, therefore, that there is no longer any strict requirement that prejudgment interest necessarily be *expressly* sanctioned by Congress in order to be recoverable in an action against a state brought pursuant to a federal statute—provided, of course, the Eleventh Amendment has been effectively abrogated by Congress in respect to the underlying damages award. Contrary to our prior holdings in *Rogers*, 821 F.2d 22, and *WJM, Inc.*, 840 F.2d 996, we now hold that interest is includable if, under normal litigation principles and rules of statutory construction, a court could have been expected to allow prejudgment interest on the underlying recovery. *Accord Pegues v. Mississippi State Employment Service*, 899 F.2d 1449, 1454 (5th Cir.1990).

■ This conclusion leads us back to the first question posed—a question that was not actually decided below—namely, does the Eleventh Amendment allow recovery against a state for back pay and related damages under the VRRA? The state defendant here stipulated to the entry of a judgment which included lost wages. By so capitulating it mooted, as a practical matter, this issue, leaving in dispute only the availability of interest on that judgment. But if compensatory actions against states under the VRRA are, in fact, barred by the Eleventh Amendment, so too is the interest on any award. It is relevant to our interest analysis, therefore, whether the private compensatory actions against states provided by the VRRA run afoul of the Eleventh Amendment. A leading circuit holding on this point is that of the Fifth Circuit in *Peel v. Florida Dept. of Transportation*, 600 F.2d 1070, 1073 (1979). The court in *Peel* held that the VRRA, enacted by Congress under its War Powers, U.S. Const. art. I, § 8, abrogated the Eleventh Amendment. While the extent of Congress' power to abrogate the Eleventh Amendment continues to divide the Court, its recent 5–4 decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) gives powerful and near-conclusive support to *Peel*, which is cited approvingly by Justice Brennan writing for the majority. *Id.* 109 S.Ct. at 2281. The battle may not yet be ended,

but we are constrained to accept the Court's majority pronouncements. The VRRA, to be sure, was not enacted under the Commerce Clause, the focus of *Union Gas*. But the Court's rationale for holding that Commerce Clause enactments abrogate the Eleventh Amendment equally supports War Power abrogation. It follows that passage of the VRRA—assuming Congress expressed its intention to abrogate with adequate clarity—removed the Eleventh Amendment bar to damages actions brought under the Act against a state. *Accord Jennings v. Illinois Office of Education,* 589 F.2d 935, 937–38 (7th Cir.1979).

The relevant section of the VRRA, as codified in 38 U.S.C. § 2022, reads:

> If any employer, who is a private employer *or a State* or political subdivision thereof … fails or refuses to comply with the provisions of [the Act] … the district court for the United States … shall have the power … to require such employer to comply with such provisions and to *compensate such person for any loss of wages or benefits suffered* by reason of such employer's unlawful action. …

(Emphasis added.) This language was adopted by Congress in 1974, in an amendment that expanded veterans' reemployment rights beyond private employees to include those employed by state and local governments.[3] Act of Dec. 3, 1974, Pub.L. No. 93–508, 88 Stat. 1594 (codified at 38 U.S.C. § 2021–26 (1976)). In enlarging the scope of the statute, we think Congress made its intention "unmistakably clear" to enforce compensatory actions against the states and their political subdivisions. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."). The final Congressional conference report stated that "[b]oth the Senate and House amendments provide for the codification into title

38 of existing law on veterans' reemployment rights, and further extends such rights to veterans who were employed by States or their political subdivisions." Joint Explanatory Statement of the Committee on Conference, S.Conf.Rep.No. 93–1240, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 6313, 6336, 6344.

VRRA compensatory relief is thus available against a state notwithstanding the Eleventh Amendment. Congress did not, to be sure, expressly mention prejudgment interest as an element of such relief. The statute, however, expressly empowers the court to require an employer, including specifically a state, "to *compensate* [the injured employee] for any loss of wages or benefits suffered by reason of such employer's unlawful action." 38 U.S.C. § 2022 (emphasis supplied). To fully compensate for past-due wages would seem to require awarding interest. Recognizing this, courts have regularly interpreted the VRRA as authorizing the award of prejudgment interest against offending *private* employers. *See Hanna v. American Motors Corp.,* 724 F.2d 1300, 1311 (7th Cir.1984) (trial judge's discretion in awarding prejudgment interest must be guided by the principle of making whole a returning veteran under the Vietnam Era Veteran's Readjustment Assistance Act), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984); *Hembree v. Georgia Power Co.,* 637 F.2d 423, 429–430 (5th Cir. 1981) (awarding prejudgment interest under the VRRA, since it is clear that plaintiff was deprived of reemployment rights explicitly granted to him by Congress, and the only way he could be made whole is by awarding him prejudgment interest). It is significant that prejudgment interest was granted against private employers *before* the 1974 amendments as well as subsequently. *Helton v. Mercury Freight Lines, Inc.,* 444 F.2d 365 (5th Cir.1971); *Accardi v. Pennsylvania Railroad Company,* 369 F.2d 805 (2d Cir.1966). It is, therefore, reasonable to believe that when

---

3. The current version of the statute is very similar to what emerged in 1974. Two amendments have since been made, one in 1982 and

one in 1984; neither of them is relevant to this case.

Congress enacted the 1974 amendments to the VRRA, extending to veterans the same reemployment rights and remedies against states as against private employers, it intended to subject states to the same relief as private employers. In a single sentence, the VRRA provides identical remedies against private and state employers: "[i]f any employer, who is a private employer or a State or political subdivision thereof," violates the Act, a district court may order the employer to "compensate" the injured party. The view that the remedies available against a private employer were to be the same as those against a state employer is further supported by the Senate Report to the 1974 amendments to the VRRA, which states, with specific regard to the remedy section, § 2022:

> In addition to recodifying existing law, this section extends to employees of State and local governments and other political subdivisions enforcement rights in the same manner and to the same extent as are currently provided for employees of private employers, including the specific right to have their legal rights litigated in the Federal courts.

S.Rep. No. 93–907, 93d Cong., 2d Sess. 109, 110 (1974).

The rationale behind granting prejudgment interest has been that "[i]nterest is a proper ingredient of the instant 'make whole' remedy and should be granted. Prejudgment interest is viewed as effectuating the purposes of the Act, particularly that of encouraging reemployment of veterans ... at the earliest opportunity." *Peel v. Florida Dept. of Transp.*, 500 F.Supp. 526, 528 (N.D.Fla.1980) (citing cases). This has been the general interpretation of most courts, leading many of them to award interest even in actions against states. *See Thomas v. City & Borough of Juneau*, 638 F.Supp. 303, 307–308 (D.Alaska 1986); *Adams v. Mobile County Personnel Board*, 115 L.R.R.M. (BNA) 2936 (S.D.Ala.1982); *Griffin v. Tunica County Schools*, 112 L.R.R.M. (BNA) 2167, (N.D.Miss.1982); *Green v. Oktibbeha County Hospital*, 526 F.Supp. 49, 56 (N.D. Miss.1981); *Peel v. Florida Dept. of Transp.*, 500 F.Supp. 526; *but cf. Micalone v. Long Island R. Co.*, 582 F.Supp. 973, 980 (S.D.N.Y.1983) (in suit brought under VRRA, successful plaintiff made whole by award of back pay and reimbursement only).

While, therefore, Congress did not expressly provide for the inclusion of prejudgment interest in an award under the VRRA, such interest has commonly been implied by the courts as being necessary to carry out Congress' purpose to make a veteran whole. We accordingly conclude that, by its express direction in the VRRA to "compensate" persons for any unlawful loss of wages or benefits caused by state employers, Congress intended to empower courts to award prejudgment interest. It follows, under the Supreme Court's recently expressed views in *Jenkins* and *Union Gas, supra*, that the states are not shielded by the Eleventh Amendment from paying such make-whole compensation including interest.

The district court expressed agreement "with the plaintiff's contention that prejudgment interest is properly awarded under the Act, in the interest of reimbursing the veteran." However, it understandably felt constrained to deny interest in light of *Shaw* and pre-*Jenkins* Eleventh Amendment precedent, including our own. As this precedent must now give way to *Jenkins'* limitation of *Shaw* to suits against the United States, we reverse and remand with directions that the district court enter an appropriate order awarding prejudgment interest, in the correct amount, to plaintiff.

*So ordered. Costs to appellant.*