**John F. KNIGHT, Jr., et al., Plaintiffs and Plaintiff Intervenors,**

**UNITED STATES of America, Plaintiff,**

v.

**The STATE of Alabama, et al., Defendants.**

**Civil Action No. CV–83–M–1676–S.**

United States District Court, N.D. Alabama, Southern Division.

Dec. 9, 1996.

8. As previously explained, the court is treating these motions to dismiss as motions for summary judgment.

## ORDER

HAROLD L. MURPHY, District Judge.

### I. Introduction

The Court has before it the matter of whether the Knight Plaintiffs' are entitled to postjudgment interest on the Capital Improvement Funds paid by the State as part of the 1991 Remedial Decree. The Knight Plaintiffs, ASU and AAMU maintain that postjudgment interest pursuant to 28 U.S.C. § 1961 is mandatory and that the Court must permit the recovery of statutory interest on the Capital Improvement Funds. The State Defendants and the University of Alabama System oppose the payment of interest, arguing that § 1961 does not apply to such funds.

As part of its 1991 Remedial Decree, the Court ordered the State to eliminate the vestiges of segregation that existed at ASU and AAMU as a result of the capital funding procedures used by the State until 1983.[1] The State chose to eliminate the identified vestiges in capital funding by paying Capital Improvement Funds to AAMU and ASU in the amount of $10,628,306 and $9,873,078, respectively.

The Court's 1991 Decree required that if the State paid Capital Improvement Funds, it could do so over a period of three years, provided, however, that the State adjusted the principal amounts paid by the rate of inflation over that time. On August 12, 1994, the State paid to ASU and AAMU the principal amounts noted above and an additional $1,649,689 as an inflation adjustment. Alabama State University therefore received a principal payment of $9,873,078 and $794,459 in additional funds as an inflation adjustment, while Alabama A & M University received a principal payment of $10,628,306 plus an inflation adjustment of $855,230.

On September 6, 1996, the Court entered an Order suggesting to the parties a possible resolution of the interest question. As the Court indicated at the status conference on September 6, 1996, it had grave reservations concerning the Knight Plaintiffs' entitlement to interest on the Capital Improvement Funds. Nevertheless, at that time and based on the Court's admittedly preliminary review of relevant case law, it was felt that the Plaintiffs were entitled to interest and that the parties should therefore attempt to resolve the matter accordingly. The Court was careful, of course, not to commit itself to any particular disposition of the issue.

After reviewing the Court's proposal, the State Defendants continue to insist that their position regarding § 1961 is correct under the law and that the Court should decide the matter outright. A more exhaustive review of the case law leaves the Court with the conviction that its preliminary conclusions were wrong and that the State is immune from § 1961 interest on these funds pursuant to the Eleventh Amendment of the United States Constitution.

### II. Discussion

The question before the Court is whether the Eleventh Amendment protects the State

---

1. In the 1991 Decree, the Court made the following observation:

    This Court has specifically found that there continues to exist in Alabama vestiges of segregation with regard to the condition of the facilities on the HBUs. These vestiges are a direct result of the failure of the State in the *past* to fund the capital development of its predominately black schools. The Court has also found that since at least 1983, the State has fulfilled its obligation to fund capital development in a nondiscriminatory manner. Therefore, this Court cannot conclude that there is a *present* violation of federal law with regard to *capital funding procedures.*
    *Knight v. Alabama,* 787 F.Supp. 1030, 1370 (N.D.Ala.1991) (emphasis in original)

against a claim for postjudgment interest on the Capital Improvement Funds pursuant to 28 U.S.C. § 1961. Under most circumstances, § 1961 operates automatically to award a prevailing party interest on any money judgment recovered in a civil case. The statute authorizes interest to begin accumulating on money judgments as soon as the judgment is entered and to continue until the judgment is satisfied.

The parties expend a great deal of energy arguing whether the 1991 Decree requiring the elimination of vestiges in facilities funding constitutes a "money judgment" under the terms of § 1961, and whether ASU and AAMU possess proper standing to request an award of interest. The Court believes, however, that the threshold inquiry is whether an award of interest pursuant to § 1961 is permissible under the Eleventh Amendment. This issue was not considered by the Court prior to its September 6, 1996 Order.

■ The Eleventh Amendment bars, among other things, a federal court from awarding damages against a State defendant. *See Edelman v. Jordan,* 415 U.S. 651, 661–64, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). A summary of Eleventh Amendment jurisprudence, as well as its applicability to this case, is set forth in great detail in the Court's 1991 Conclusions of Law. *Knight,* 787 F.Supp. at 1368–72. There, the Court explained that, once a claim implicates the terms of the Eleventh Amendment, a federal court has no jurisdiction to entertain the claim unless it fits within one of three narrow exceptions: (1) an unequivocal waiver by the state of its constitutional protections under the amendment; (2) an express abrogation by Congress in a federal statute; and (3) a determination by the Court that the plaintiff seeks only prospective relief, designed to bring an end to a *present* violation of federal law. *Id.* at 1369–70 (citing cases).

The claim for postjudgment interest directly implicates the Eleventh Amendment because it seeks funds from State coffers. The Court must therefore determine whether any of the three exceptions to the bar presented by the Eleventh Amendment apply. The

Court believes that none of the exceptions apply in this instance.

■ First, the State of Alabama has not expressly waived its Eleventh Amendment immunity for claims of postjudgment interest awarded in federal lawsuits. *See* Ala. Const. Art. I, § 14 ("the State of Alabama shall never be made a defendant in any court of law or equity"); *see also Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978). Nor has the Court found any cases that would tend to suggest that the State of Alabama, by agreeing to pay the Court-calculated Capital Improvement Funds in the first instance thereby waived its sovereign immunity. Court's have recognized that a state can impliedly waive Eleventh Amendment immunity, but the factual contexts in which these cases arise are too narrow to support any analogy to the facts of this situation.[2]

■ Second, Congress has not abrogated the States' sovereign immunity with respect to an award of postjudgment interest pursuant to 28 U.S.C. § 1961. Congress did waive sovereign immunity with respect to claims against the States for violations of Title VI of the Civil Rights Act of 1964. The waiver is effective, however, only with respect to violations that occur in whole or part *after* October 21, 1986. 42 U.S.C. § 2000d–7(b). Since the Court found that Alabama's unconstitutional conduct relating to facilities funding ended by 1983, the congressional waiver is not applicable. *See Knight,* 787 F.Supp. 1030, 1370; *see also, Lussier v. Dugger,* 904 F.2d 661, 669 (11th Cir.1990) (affirming the district court's denial of retroactive relief for any violation that may have occurred prior to October 21, 1986).

■ Third, the Court's 1991 Decree carefully analyzed the relationship between the Alabama's duty to eradicate the vestiges existing at its predominately black universities and the prohibitions inherent in the Eleventh Amendment. After surveying the reach of the Eleventh Amendment, the Court made the following observations concerning why it

---

**2.** *E.g., Toll v. Moreno,* 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982); *Vargas v. Trainor,* 508

F.2d 485, 492 (7th Cir.1974); *Laura I v. Clausen,* 676 F.Supp. 717, 719 (M.D.La.1988).

could not force the State to spend State money to eliminate the vestiges of segregation that attached to the facilities of ASU and AAMU:

¶ 99. [The Court] cannot compel the State to expend money from its coffers for facilities ... for at least two reasons: First, the State action which caused the current [unconstitutional] situation is no longer ongoing. In fact it ended by at least 1983 and there is no indication that the State intends to resume its illegal conduct. *Papasan [v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)] clearly teaches that the *Ex parte Young[,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] exception to the Eleventh Amendment has focused on cases where there is an ongoing violation of federal law as opposed to a case where federal law has been violated over a period of time in the past. [Cite.] Second, the amount of money which the Court has found necessary to eliminate the vestiges attached to [the] HBUS' facilities is an *accrued* monetary liability arising from a prior breach of a legal duty, viz., the nondiscriminatory funding of capital projects.

*Knight,* 787 F.Supp. at 1371 (emphasis in original).

Instead of ordering a capital appropriation or bond issue, the Court simply indicated that the State's absolute obligation was to remove the identified vestiges. The Court then suggested that three possible alternatives for doing so existed. First, the State could transfer to ASU and AAMU existing facilities from other State institutions; second, the State could appropriate the funds identified by the Court as "necessary to correct the situation which its past unconstitutional conduct created"; or third, the State could choose to close ASU and AAMU. *Id.* at 1370–71. The Court then added the following observation concerning its assessment of the money required to remediate the identified vestiges:

¶ 104 This Court ... has found that the vestiges remaining as a result of the State's prior discriminatory capital funding process can be eliminated in their entirety by the appropriation of the monies the

Court has indicated. It is not a step along the path but the entire journey.

In short, the Court determined that the Eleventh Amendment prohibited it from ordering the State to appropriate funds to compensate for past unconstitutional conduct, but in the event the State did appropriate the funds identified by the Court, its obligation to remove the vestiges adhering to the capital funding process would be completely satisfied. The choice on how to proceed in eliminating the vestiges was, however, completely the State's.

The same Eleventh Amendment proscriptions that constrained the Court from ordering the State to appropriate Capital Improvement Funds in 1991 similarly bars the Court from now awarding interest pursuant to § 1961. Quite simply, if the underlying claim on which an award of interest is sought cannot be ordered by the Court, then the Court has no basis for ordering an interest payment which the State opposes and which itself would violate the Eleventh Amendment.

This conclusion is consistent with the Eleventh Circuit's holding in *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 794 (1988), that the Court believes is the only other case to consider whether the Eleventh Amendment bars an award of postjudgment interest pursuant to § 1961. The *McDaniel* court ordered a State defendant to pay postjudgment interest under § 1961 on an award of litigation costs, despite the State's invocation of Eleventh Amendment immunity. 855 F.2d at 800. The court reasoned that, because the underlying award of costs did not violate the Eleventh Amendment, the award of postjudgment interest did not violate the Amendment. The following language from *McDaniel* is instructive:

The State defendants contend that an award of "retroactive" interest is barred by the Eleventh Amendment. They concede that the federal courts have the power to tax costs against the States, even in the absence of a statutory provision that contains an express waiver of the States' immunity. [Cite.] For purposes of the Eleventh Amendment, we see no reason for distinguishing between actual costs and

interest on those costs.... A federal court has the power to tax costs against the States in the same manner as it taxes costs against other litigants. [Cite.] Because "an award of costs does not compensate the plaintiff for the injury that first brought him into court," such an award does not violate the Eleventh Amendment's proscription against awards of "retroactive" relief against the State. [Cite.]

*Id.* (footnotes omitted).

*Accord Reopell v. Com. of Massachusetts,* 936 F.2d 12, 15 (1st Cir.1991), (prejudgment interest is recoverable in an action against a state brought pursuant to a federal statute, "provided, of course, the Eleventh Amendment has been effectively abrogated by Congress in respect to the underlying damages award") *cert. denied,* 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991). *See also Missouri v. Jenkins,* 491 U.S. 274, 292–293, 109 S.Ct. 2463, 2473–2474, 105 L.Ed.2d 229 (1989) (O'Connor, J., concurring in part and dissenting in part).

**ACCORDINGLY,** the motion for interest pursuant to § 1961 on the Capital Improvement Funds is DENIED.