**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James C. GODFREY, Defendant–Appellee.**

**No. 92–8512.**

United States Court of Appeals, Eleventh Circuit.

May 24, 1994.

---

John S. Davis, Asst. U.S. Atty., Atlanta, GA, for appellant.

Julian M. Treadaway, Marietta, GA, Bobby G. New, Smyrna, GA, for appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and RONEY, Senior Circuit Judge.

TJOFLAT, Chief Judge:

In this case, the Government appeals a sentence imposed below the guideline sentence range for possession of an unregistered

sawed-off shotgun in violation of 26 U.S.C. § 5861(d) (1988). The Government contends that the downward departure was precluded because the mitigating circumstances relied upon by the district court to depart from the sentence range prescribed by the Guidelines were adequately considered by the United States Sentencing Commission in promulgating the Guidelines. We agree, and accordingly vacate the sentence and remand the case for resentencing.

## I.

In May of 1991, detectives from the Cherokee County, Georgia, Sheriff's department arrested two men for the burglary of a sporting goods store. During questioning, the burglars said that they had intended to steal firearms from the store and to sell them to James C. Godfrey, who had bought stolen property from them many times over the past year. Based on the burglars' statements, the detectives obtained a search warrant for Godfrey's house.

During the search of Godfrey's residence, the detectives found numerous incriminating items,[1] including the sawed-off shotgun at issue here. The detectives found the shotgun, which was fully functional and loaded, in Godfrey's bedroom; it was leaning against the wall near his bed. The shotgun's barrels had been shortened to eleven inches, seven inches under the statutory minimum.[2]

As a result of the seizure, a federal grand jury indicted Godfrey for possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). Godfrey subsequently pled guilty to the charge. The presentence report set out the facts recited above and recommended an adjusted criminal offense level of sixteen[3] and a criminal history category of I, which yielded a guideline sentence range of twenty-one to twenty-seven months' imprisonment. The district court adopted, without objection, the presentence report's factual findings and recommended sentence range.

At the sentencing hearing, Godfrey asked the court to depart from the guideline sentence range and to impose a sentence of probation for the following reasons: (1) he was fifty-eight years old; (2) he had no prior criminal convictions; (3) the crime constituted a mere *de minimis* violation of the firearms act (because it involved only one gun); (4) he was ignorant of the firearms registration requirements; (5) he had inherited the shotgun from his father; (6) the shotgun's barrels had been shortened before he inherited it; (7) the shotgun was an antique and he kept it as a collector's item; (8) the stock of the gun was full length and the total length of the weapon, including the stock and the barrel, was longer than the statutory minimum;[4] and (9) he, as was evident from the nature of his conduct and the characteristics of the shotgun, did not possess the gun with the intent to use it as a concealed offensive weapon. Godfrey argued that the "promulgators of the act [did not] anticipate this sort of *de minimis* conduct standing alone as forming the basis for a period of incarceration of at least 21 months."

After some discussion about these proposed justifications for a downward departure, the following colloquy occurred:

THE COURT: I don't like the guidelines. I hate them. I think they are terrible, but

---

1. The detectives seized a .30 caliber carbine rifle, a .22 caliber rifle, two .38 caliber revolvers, 29 sticks of dynamite, 5.3 ounces of marijuana, moonshine, automobile engines, radios, television sets, two video cassette players, a video cassette recorder camera, cash, and food stamps. Some of the items had been stolen; on several, the serial numbers had been obliterated.

2. The relevant criminal statute states that "[i]t shall be unlawful for any person ... [to] possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record...." 26 U.S.C. § 5861(d). The definition of firearms that require registration includes "a shotgun having a barrel or barrels of less than 18 inches in length ... [and] a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length...." 26 U.S.C. § 5845(a) (1988).

3. The offense level of sixteen, which the presentence report recommended, reflected a two-level reduction from the base offense level of eighteen for acceptance of responsibility. *See* United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Nov. 1, 1993).

4. *See supra* note 2.

I'm obligated to follow them, the same as you are.... You have to offer some reason to depart.

DEFENSE COUNSEL: What I offer as a reason to depart, your Honor, is the defendant's presumed status as a law-abiding, lawful citizen for fifty-eight years, as he stands before the court, with one blemish on his record, which is a violation of a registration requirement, not *mala in se, mala prohibita,* and a weapon which in every aspect of the law other than the barrel length, every other aspect of the firearms act, is a legal weapon.

· I think these factors form the basis for the court, standing as a trier of fact rather than a member of a committee seven hundred miles north of here, to depart from these guidelines and impose a rational sentence, and I submit to the court that under these circumstances a sentence of twenty-one to twenty-seven months in confinement is not rational. A probationary sentence is rational under these circumstances.

....

THE COURT: [D]oesn't it sort of strike you [the prosecutor] as a little bit harsh to have an antique gun that doesn't violate the overall length and have to go to prison for twenty-one months because you didn't register it?

The district court concluded that this case involved mitigating circumstances of a kind and to a degree not adequately considered by the Sentencing Commission in formulating the Guidelines. The court then stated that, even if the Sentencing Commission had adequately considered the circumstances, "there exists a reason for a departure downward in light of the special and particular circumstances of this case." The court listed the following circumstances as justifications for downward departure: (1) Godfrey was charged with only one firearms violation; (2) the firearm was already modified when Godfrey acquired it; (3) Godfrey inherited the firearm from his father (instead of purchasing it in a prohibited transaction or obtaining it through some other illegal means); (4) Godfrey did not use the firearm in an unlaw-

ful manner; and (5) the nature of the firearm suggests that Godfrey did not possess it for any illegal purposes (that is, the gun's total length was longer than the statutory minimum, making it an unlikely candidate for concealment, its serial number was not altered, and it was an antique). The court concluded that:

> [T]he facts of this case, when compared to the usual violation that would be presented, under the relevant offense statute provides a punishment that is extremely excessive *as a deterrent.* All of the circumstances taken as a whole create mitigating circumstances of a kind not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....

(emphasis added).

The court, accepting the gist of Godfrey's argument, departed downward from the guideline sentence range. To determine the amount of departure, and thus the sentence to impose, the court looked to a specific offense characteristic that formerly applied in unlawful possession of firearms cases involving sawed-off shotguns. In those cases, section 2K2.1(b)(1) of the Sentencing Guidelines allowed a reduction to offense level six for firearms, including sawed-off shotguns, that were possessed "solely for lawful sporting purposes or collection." Had this specific offense characteristic applied in Godfrey's case, the court would have been required to reduce Godfrey's offense level to six. This characteristic did not apply, however, because the Guidelines had been amended, *see* United States Sentencing Commission, *Guidelines Manual,* App. C, amend. 333 (Nov. 1, 1990), so the court—drawing on the inapplicable specific offense characteristic "by analogy"—departed and lowered Godfrey's adjusted offense level to ten. Using this offense level, the court sentenced Godfrey to three months' residency in a halfway house, three months' home detention at the defendant's expense, five years' probation, a $2000 fine, and 500 hours of community service work.

We are asked by the Government to review the district court's application of the Sentencing Guidelines in granting the downward departure. In Part II, we set out the

standard of review in this case. After examining in Part III each of the mitigating circumstances listed by the district court and concluding that none of them individually could have justified a downward departure from the guideline sentence range, we explain in Part IV why they cannot collectively justify a downward departure.

## II.

██ We have jurisdiction over the Government's appeal from Godfrey's sentence pursuant to 18 U.S.C. § 3742(b) (1988). "[T]he issue of whether a district court has the authority to depart downward from the applicable guideline range in a particular situation is a question of law subject to our plenary review." *United States v. Costales,* 5 F.3d 480, 483 (11th Cir.1993). The use of an invalid ground for departure by the district court is an incorrect application of the Guidelines. *Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992).

Congress, in the Sentencing Reform Act of 1984, made clear that a district court can impose a sentence outside the applicable guideline sentence range only if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. . . ." 18 U.S.C. § 3553(b) (1988). *See also* U.S.S.G. § 5K2.0, p.s. (Nov. 1, 1993). Although the Sentencing Commission explicitly recognized that departure from the guideline sentence range would be warranted in some cases, it stated that such cases would be rare. U.S.S.G. Ch. 1, Pt. A, § 4(b). Consequently, "departure is reserved for 'unusual' cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime which significantly differ from the normal or 'heartland' conduct in the commission of the crime." *United States v. Gonzalez–Lopez,* 911 F.2d 542, 549 (11th Cir. 1990).

██ We follow a three-part analysis in reviewing departures from the applicable sentence range under the Sentencing Guidelines. First, we determine whether the district court relied on a mitigating circum- stance that the Sentencing Commission did not adequately consider in formulating the Guidelines. *United States v. Mogel,* 956 F.2d 1555, 1557 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992); *see* U.S.S.G. § 5K2.0. We review *de novo* whether the Commission, in carrying out that task, adequately considered that circumstance; if the Commission did so, a district court is precluded from departing from the guideline sentence range on account of it. *United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991); *United States v. Chotas,* 913 F.2d 897, 900 (11th Cir.1990), *cert. denied,* 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991). Second, if the Commission did not adequately consider the circumstance in question, we decide whether the district court's reliance on the circumstance—that is, the court's treatment of the circumstance as relevant—was consistent with the goals of the Sentencing Guidelines. *Mogel,* 956 F.2d at 1557. If it was, we review the departure from the guideline sentence range—that is, the weight the district court gave the circumstance in fashioning the defendant's sentence—for reasonableness. *Id.* at 1557; *Weaver,* 920 F.2d at 1573.

## III.

We need only examine the first element of the test to conclude that the district court should not have departed downward from the guideline sentence range in this case. We find that the Sentencing Commission adequately considered each of the factors the district court listed, thus precluding their use as a justification for departing downward from the applicable guideline sentence range.

The district court departed downward from the applicable guideline sentence range by reducing the offense level on the basis of five offense-based characteristics. The statute guiding the Sentencing Commission's consideration of offense- and offender-based components, 28 U.S.C. § 994 (1988), enumerates factors the Commission could consider in determining the offense level for a given offense. *See Mogel,* 956 F.2d at 1558–61 (explaining the relevant penological goals to be taken into account in constructing the

Guidelines). One of these factors is "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." 28 U.S.C. § 994(c)(2). Thus, the mitigating circumstances the district court relied upon in departing from the guideline sentence range may or may not have been considered by the Sentencing Commission, depending on the number and specificity of the offense characteristics enumerated in the Guidelines.[5]

■ The Guidelines that applied at the time of Godfrey's offense, and thus govern Godfrey's sentence,[6] listed the following relevant specific offense characteristics for the offense of possessing an unregistered firearm:

(1) If the defendant obtained or possessed the firearm ..., other than a firearm covered in 26 U.S.C. § 5845(a) [which includes sawed-off shotguns],[7] solely for lawful sporting purposes or collection, decrease the offense level determined above to level 6.

(2) If any firearm was stolen, or had an altered or obliterated serial number, increase by 2 levels.

U.S.S.G. App. C, amend. 374 (Nov. 1, 1991) (providing text of § 2K2.1 in effect on date of Godfrey's offense). An examination of the evolution of these specific offense characteristics shows that the Sentencing Commission adequately considered the five mitigating circumstances listed by the district court.

### A.

■ As originally formulated, section 2K2.1 had the following specific offense characteristics:

(b) Specific Offense Characteristics

(1) If the firearm was stolen or had an altered or obliterated serial number, increase by 1 level.

(2) If the defendant obtained or possessed the firearm solely for sport or recreation, decrease by 4 levels.

U.S.S.G. App. C, amend. 189 (Nov. 1, 1989) (providing original text of § 2K2.1). The application note explained that:

Under § 2K2.1(b)(2), intended lawful use, as determined by the surrounding circumstances, provides a decrease in offense level. Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns for example, have *few* legitimate uses) and ammunition, *the location and circumstances of possession,* the nature of the defendant's criminal history (*e.g.,* whether involving firearms), and the extent to which possession is restricted by local law.

*Id.* (emphasis added).

These specific offense characteristics in section 2K2.1 were amended effective November 1, 1989, to read:

(b) Specific Offense Characteristics

(1) If the defendant obtained or possessed the firearm or ammunition solely for lawful sporting purposes or

---

**5.** While the Commission has published a variety of "Specific Offense Characteristics" for some offenses, *see, e.g.,* U.S.S.G. § 2B3.1 (robbery); U.S.S.G. § 2D1.1 (drug offenses), it has not done so for all offenses, *see, e.g.,* U.S.S.G. § 2D2.1 (unlawful possession of controlled substances).

**6.** This court has explained that "[w]e apply the version of the sentencing guidelines and commentary in effect on the date of sentencing, 18 U.S.C. §§ 3553(a)(4)-(5) (1988), unless a more lenient punishment would result under the guidelines version in effect on the date the offense was committed...." *United States v. Wilson,* 993 F.2d 214, 216 (11th Cir.1993). In reviewing Godfrey's sentence, we examine the Guidelines in effect on the date Godfrey committed the offense, May 29, 1991, because the version in effect on the date Godfrey was sentenced, April

6, 1992, contained more stringent specific offense characteristics.

**7.** The application note to section 2K2.1 provided in relevant part:

Under 26 U.S.C. § 5845(a), the term 'firearm' includes a shotgun, or a weapon made from a shotgun, with a barrel or barrels of less than 18 inches in length; a weapon made from a shotgun or rifle with an overall length of less than 26 inches; a rifle, or weapon made from a rifle, with a barrel or barrels less than 16 inches in length; a machine gun; a muffler or silencer for a firearm; a destructive device; and certain other large bore weapons.

U.S.S.G. App. C, amend. 374 (Nov. 1, 1991) (providing text of § 2K2.1 in effect on date of Godfrey's offense).

collection, decrease the offense level determined above to level 6.

(2) If the firearm was stolen or had an altered or obliterated serial number, increase by 2 levels.

*Id.* The application note for the new section 2K2.1(b)(1) remained the same as the application note for the former section 2K2.1(b)(2). Thus, a court could reduce a defendant's offense level to six if it found that the defendant possessed the firearm for the purpose of collection. If Godfrey had been sentenced under this version of the Guidelines, the district court could have used section 2K2.1(b)(1) to reduce Godfrey's offense level to six, because all five circumstances that the district court listed tend to indicate that Godfrey possessed the shotgun for collection purposes. In fact, that version of section 2K2.1(b)(1) seems to envision Godfrey's situation precisely; the facts found by the district court, "the number ... of firearms ..., the location and circumstances of possession, [and] the nature of the defendant's criminal history" in the language of the application note, *id.*, suggest that Godfrey possessed the shotgun for the purpose of collection. *See, e.g., United States v. Napoli,* 954 F.2d 482 (8th Cir.1992) (affirming a reduction under this version of section 2K2.1(b)(1) for a defendant who: (1) possessed an unregistered sawed-off shotgun; (2) did not possess the shotgun for an unlawful purpose; (3) mistakenly believed that the shotgun was a collector's item; (4) modified the shotgun himself rather than purchasing or stealing it; and (5) never fired the shotgun).

Section 2K2.1(b)(1), however, was amended effective November 1, 1990, prior to the commission of Godfrey's offense, to read:

If the defendant obtained or possessed the firearm or ammunition, *other than a firearm covered in 26 U.S.C. § 5845(a),* solely for lawful sporting purposes or collection, decrease the offense level determined above to level 6.

U.S.S.G. App. C, amend. 333 (Nov. 1, 1990) (emphasis added).[8] As the Commission explained, "[t]his amendment provides that the reduction in offense level under subsection (b)(1) for possession of a weapon for sporting purposes or collection may not be applied in the case of any weapon described in 26 U.S.C. § 5845(a)." *Id.* Sawed-off shotguns are covered by section 5845(a); thus, the Sentencing Commission decided that the "location and circumstances" of the possession of sawed-off shotguns no longer warrant a decrease in the offense level. The Guideline governing Godfrey's sentence retained this provision unchanged. *See* U.S.S.G. App. C, amend. 374 (Nov. 1, 1991). Consequently, even if a defendant had the best of intentions and possesses a sawed-off shotgun solely for the purpose of collection, a district court could not reduce his offense level to six under section 2K2.1(b)(1) at the date of Godfrey's offense.

The five mitigating circumstances that the district court listed do not differ at all from the circumstances that would have warranted a reduction under former section 2K2.1(b)(1). When the Sentencing Commission amended section 2K2.1(b)(1), it adequately considered the types of circumstances listed by the district court and decided that, for cases involving sawed-off shotguns, some circumstances, including the number and type of firearms, the location and circumstances of possession, and the nature of the defendant's criminal history, do not justify a reduction in a defendant's offense level under the Guidelines.

---

8. At the time of Godfrey's offense, the background note to section 2K2.1 explained that

[u]nder pre-guidelines practice, there was substantial sentencing variation for these crimes. From the Commission's investigations, it appeared that the variation was attributable primarily to the wide variety of circumstances under which these offenses occur. Apart from the nature of the defendant's criminal history, *his actual or intended use of the firearm was probably the most important factor in determin-*

*ing the sentence. ... [T]he guideline is not based on the type of firearm. Intended lawful use, as determined by the surrounding circumstances, is a mitigating factor.*

U.S.S.G. App. C, amend. 374 (Nov. 1, 1991) (emphasis added). This background note shows that the Sentencing Commission recognized that there are a wide variety of circumstances under which the instant offense may occur and considered the mitigating circumstances of intended lawful use in formulating the Guidelines.

Therefore, the district court failed to identify any mitigating circumstances that the Sentencing Commission did not adequately consider in formulating the Guidelines.

B.

Even if the Sentencing Commission's amendment of section 2K2.1(b)(1) did not clearly demonstrate that the mitigating circumstances listed by the district court had been adequately considered by the Commission in formulating the Guidelines, we would still conclude that the district court should not have departed downward from the guideline sentence range in this case. Our examination reveals that the Commission, in formulating the Guidelines, adequately considered each circumstance listed by the district court; as such, the district court erred when it relied on them to justify a downward departure.

■ The first circumstance listed by the district court was that Godfrey committed only one firearms violation. A court cannot depart downward from the guideline sentence range solely because the defendant committed only the offense of conviction.[9] A court's starting point in constructing the sentence range is the base offense level of the offense of conviction; the fact that the defendant committed no other offense cannot justify a downward departure. If it could, then the court could depart downward in every case involving only one conviction. The Sentencing Commission also adequately considered the number of firearms violations involved in a case by providing the grouping rules for multiple counts to increase the sentences for defendants who have committed multiple offenses. See U.S.S.G. §§ 3D1.1–3D1.5. Consequently, the fact that a defendant may have committed only one firearms violation has been adequately considered by the Sentencing Commission and therefore cannot independently justify the downward departure in this case.

■ The second mitigating circumstance that the district court listed was that the firearm had been modified before Godfrey acquired it. Godfrey was charged with possession of an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d), not the distinct crime of making a sawed-off shotgun, 26 U.S.C. § 5861(f).[10] The crime for which Godfrey was convicted is quite simply possession of an unregistered sawed-off shotgun. That the Guidelines are designed to account for the relative seriousness of each district crime indicates that the absence of related crimes was adequately considered by the Sentencing Commission. Thus, the absence of the additional crime of making a sawed-off shotgun is not an independent ground for departing downward from the guideline sentence range. The district court, therefore, erred by relying on the fact that the firearm had been modified before Godfrey received it to depart downward from the guideline sentence range.

■ Similarly, the third circumstance listed by the district court, that Godfrey had inherited the firearm from his father (instead of purchasing it in a prohibited transaction or obtaining it from some other illegal means), is not an independent ground for departing downward from the guideline sentence range. The court concluded that Godfrey obtained the shotgun by legal means because he inherited it from his father. Even assuming that inheriting a sawed-off shotgun is less blameworthy than purchasing one, the Sentencing Committee adequately considered this circumstance when formulating the Guidelines. If Godfrey had purchased the sawed-off shotgun in a prohibited transaction or obtained it from some other illegal means, he could have been convicted for receiving a firearm transferred to him in violation of 26 U.S.C. §§ 5812, 5861(b) (receiving or possessing firearm transferred in violation of law). Further, when Godfrey was sentenced, possession of a stolen firearm was a specific offense characteristic that mandated a two-level in-

9. The term "offense of conviction," as used by the Guidelines, refers "only to the conduct charged in the indictment for which the defendant was convicted." *United States v. Scroggins*, 880 F.2d 1204, 1209 n. 12 (11th Cir.1989).

10. A separate guideline, former section 2K2.2, applied to the crime of making a sawed-off shotgun before it was deleted by consolidation with section 2K2.1. *See* U.S.S.G. App. C, amend. 374 (Nov. 1, 1991).

crease in the offense level. *See* U.S.S.G. App. C, amend. 374 (Nov. 1, 1991) (providing pertinent text of § 2K2.1(b)(2)).

■ The fourth mitigating circumstance listed by the court, that Godfrey did not use the firearm in an unlawful manner, has been adequately considered by the Sentencing Commission in formulating the Guidelines. If the district court had found that Godfrey possessed the shotgun "in order to facilitate ... the commission of another offense," the court would have been justified in increasing the sentence above the guideline range "to reflect the actual seriousness of the defendant's conduct." U.S.S.G. § 5K2.9, p.s. Thus, the district court erred by relying on the fact that Godfrey did not use the firearm in an unlawful manner in order to justify its downward departure from the guideline sentence range, because the Sentencing Commission adequately considered that mitigating circumstance in formulating the Guidelines.

■ The fifth mitigating circumstance listed by the district court, that the nature of the firearm suggests that Godfrey did not possess it for any illegal purposes, is not an independent ground for downward departure in this case. As this court has recognized, "Congress, quite simply, criminalized possession of an unregistered sawed-off shotgun; it did not require that possession be accompanied by intent to use the unregistered sawed-off shotgun to commit a violent felony." *United States v. Hadaway,* 998 F.2d 917, 920 n. 5 (11th Cir.1993). *See also United States v. Uzelac,* 921 F.2d 204, 206 (9th Cir.1990) (placing the burden on the defendant to prove by a preponderance of the evidence that actual or intended use of the firearm was solely for sporting or recreational purposes; "the government need not prove that [the defendant] had an impermissible actual or intended use"). Moreover, as we explained *supra,* Part A, the amendments to the relevant guidelines reveal that the Commission adequately considered the intent for possession as a mitigating circumstance and therefore a district court is precluded from departing downward from the guideline sentence range on account of it.

■ Further, the district court's conclusion about the nature of the firearm is based upon circumstances that the Sentencing Commission has considered and that are not sufficiently atypical to justify a downward departure. The court cited three facts to support its conclusion about the nature of the firearm: (1) the firearm's total length was greater than the length prohibited in 26 U.S.C. § 5845(a); (2) the firearm's serial number was not obliterated; and (3) the firearm's age suggests that Godfrey kept it as an antique or collectible. Although the total length of Godfrey's shotgun was one and one-half inches longer than the statute allows, it was nevertheless illegal because the barrel was seven inches shorter than the statute allows.[11] Since the gun was only a little longer than two feet, this fact is not atypical and thus it does not justify a downward departure from the guideline sentence range.

■ Likewise, the presence of an unaltered serial number is not an atypical circumstance warranting downward departure, because a specific offense characteristic mandates a two-level increase in the offense levels for firearms with obliterated serial numbers. *See* U.S.S.G. App. C, amend. 374 (Nov. 1, 1991) (providing text of § 2K2.1(b)(2) in effect on date of Godfrey's offense). Further, obliterating a serial number constitutes a distinct crime. *See* 26 U.S.C. § 5861(g) (obliteration of a firearm's serial number).

■ The characteristics of Godfrey's shotgun, including its age, are typical and thus do not justify downward departure. Although the weapon was quite aged, it still functioned and was neither stored nor possessed in a way that would suggest that Godfrey regarded it as an antique or collector's item. *See United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990) (finding that, although the defendant had a gun collection, sawed-off shotguns are not ordinarily considered collectibles; noting that the gun was

---

11. *See supra* note 2.

found concealed in a drawer and that the defendant had made no effort to mount it).

### C.

 We conclude that none of the circumstances listed by the district court warrants a downward departure from the applicable guideline sentence range. The district court failed to identify any "atypical" characteristics about the circumstances surrounding the crime that the Sentencing Commission did not consider in formulating the Guidelines. A sentencing judge's discretion to depart from the guideline sentence range is seriously curtailed for cases in which the defendant's conduct conforms to the "heartland" scenario of the Guidelines. *Gonzalez–Lopez*, 911 F.2d at 551. A district court cannot depart from the Guidelines merely because it believes that a sentence is excessive. *Id.*

### IV.

 Our consideration of all five mitigating circumstances listed by the district court in their entirety does not compel a different result. In departing downward from the guideline sentence range, the court stated that:

> the facts of this case, when compared to the usual violation that would be presented, under the relevant offense statute provides a punishment that is extremely excessive *as a deterrent*. All of the circumstances taken as a whole create mitigating circumstances of a kind not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....

(Emphasis added). In determining whether a departure from the guideline sentence range is justified in a particular case, a sentencing court must apply the Guidelines with an eye to the same sentencing purposes underlying the Sentencing Commission's establishment of the Guidelines: retribution, general deterrence, specific deterrence (incapacitation), and rehabilitation. *See* 18 U.S.C. § 3553(a)(2). The district court in this case did not specify whether it believed that the sentence was excessive for the purpose of general or specific deterrence. The court, however, relied on five offense-based characteristics to reduce the offense level, suggesting that it was referring to general deterrence (because 28 U.S.C. § 994 relates the goal of general deterrence to the offense level and the goal of specific deterrence to the criminal history category). *See Mogel*, 956 F.2d at 1558–60 (explaining structure of the Guidelines).

The district court lacked the authority to depart on either general or specific grounds. The argument that the sentence was too excessive for the purpose of specific deterrence fails because Godfrey already had been placed in a criminal history category of I. This court has held that "[t]he placement of an offender in category I reflects the Commission's assessment that the offender possesses the lowest possible likelihood of recidivism.... A judge therefore may not depart downward from a category I sentence on [specific deterrence] grounds." *Id.* at 1563. In addition, the district court could not depart downward from the guideline sentence range on the ground that the sentence was excessive for the purpose of general deterrence, because it failed to identify—and the record does not contain—any circumstances, not considered adequately by the Sentencing Commission, suggesting that the guideline sentence range would not serve the purpose of general deterrence. Consequently, the district court erred in departing downward from the guideline sentence range based on a conclusion that the sentence was excessive for the purpose of general deterrence.

### V.

For the reasons stated above, we vacate the sentence and remand for sentencing in accordance with this opinion.

IT IS SO ORDERED.