United States Court of Appeals,

Eleventh Circuit.

No. 94-4614.

UNITED STATES of America, Plaintiff-Appellant,

v.

A. Scott MILLER, Defendant-Appellee.

March 22, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-7-CR), Federico A. Moreno, Judge.

Before KRAVITCH, ANDERSON and BARKETT, Circuit Judges.

ANDERSON, Circuit Judge:

The government appeals the sentence imposed on A. Scott Miller for engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. It argues that the district court improperly departed from the sentence range prescribed by the Sentencing Guidelines promulgated under the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3586. Because the district court failed to make sufficient findings of fact to support its departure, we vacate the sentence and remand the case for resentencing.

## I. FACTS

Miller pleaded guilty to a three-count indictment which included one count of "receiving and depositing" criminally derived property in violation of 18 U.S.C. § 1957[1] and two counts of

---

[1]18 U.S.C. § 1957 provides, in relevant part:

**Engaging in monetary transactions in property derived from specified unlawful activity**

(a) Whoever ... knowingly engages or attempts to engage

knowingly making false statements to an agency or department of the United States in violation of 18 U.S.C. § 1001. The receiving and depositing charge arises out of $42,133 Miller deposited in his personal bank account on October 19, 1988. These proceeds derived from the sale of property located in Lauderhill, Florida. In an agreed statement of facts, Miller admitted that he knew the $42,133 was criminally derived property.

It appears from the agreed statement of facts for sentencing that Miller had provided legal services to Fabio Enrique Ochoa from time-to-time since at least 1981, at which time Miller filed several pleadings for Ochoa in relation to a criminal proceeding in which Ochoa was involved. As recently as July 23, 1990, Miller's law firm received $50,000 toward a legal fee for the representation of Mauricio Ochoa, Fabio's brother. The agreed statement of facts indicates that Miller was involved with Ochoa at different times and, perhaps, in different capacities, between 1981 and 1990.

---

in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

(c) In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.

(f) As used in this section—

(1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument ... by, through, or to a financial institution ..., but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution;

However, the scope of Miller's legitimate legal representation of Ochoa is unclear.

At sentencing, the district court computed a base offense level of 17, as provided by U.S.S.G. § 2S1.2(a) for violation of 18 U.S.C. § 1957. The court increased the base offense level by five levels based on its finding that Miller knew that the funds were narcotics proceeds. *See* U.S.S.G. § 2S1.2(b)(1)(A).[2] The court added another two-level increase for Miller's use of special skill as a criminal defense attorney in a manner that significantly facilitated the commission or concealment of the offense. *See* U.S.S.G. § 3B1.3. The court then granted a three-level downward departure for acceptance of responsibility. *See* U.S.S.G. §§ 3E1.1. Finally, the court granted Miller a seven-level downward departure on the grounds that the Sentencing Commission (the "Commission") failed to adequately consider the impact of U.S.S.G. § 2S1.2(a) upon an attorney who derives knowledge of the source of the criminally-derived property through a legitimate attorney-client relationship.[3] *See* U.S.S.G. § 5K2.0; 18 U.S.C. § 3553(b).

---

[2]It found that Miller's admitted "willful blindness" amounted to such knowledge.

[3]In its Downward Departure Sentencing Order, the district court stated:

> The Court finds that the Sentencing Commission has not adequately considered the impact of Section 2S1.2 upon an attorney who derives knowledge of the source of the property through a legitimate attorney-client relationship. Thus although Scott Miller has had the offense level enhanced because of his status as an attorney, it was his position as a criminal lawyer that allowed him to legitimately represent his clients. Therefore, the Court specifically finds that the guidelines do not address this circumstance to the appropriate degree, and thus the sentence may be

## II. DISCUSSION

In Sentencing Guidelines cases, we review the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Rojas,* 47 F.3d 1078, 1080 (11th Cir.1995). "[T]he issue of whether a district court has the authority to depart downward from the applicable guideline range in a particular situation is a question of law subject to our plenary review." *United States v. Costales,* 5 F.3d 480, 483 (11th Cir.1993).

Congress has made clear that a district court has authority to depart from the applicable guideline sentence range only if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b). *See also* U.S.S.G. § 5K2.0. We have recognized that "departure is reserved for "unusual' cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime which

---

adjusted to reflect such fact.

As further support for its decision to depart from the Guidelines, the district court also stated:

> [T]he defendant's *conduct* makes this an atypical case, outside of the heartland of other cases and thus for that reason, combined with the mitigating factors related to the individual, the Court departs downward from the guidelines. The Court specifically finds that defendant Miller's conduct significantly differs from the norm, thereby allowing the Court to exercise its discretion in departing downward from the guidelines.

*Id.* This constitutes the district court's entire discussion of its rationale for departing from the guidelines.

significantly differ from the normal or "heartland' conduct in the commission of the crime."   *United States v. Gonzalez-Lopez,* 911 F.2d 542, 549 (11th Cir.1990).

We apply a three-step process when reviewing departures under U.S.S.G. § 5K2.0.   *United States v. Godfrey,* 22 F.3d 1048, 1053 (11th Cir.1994);   *United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991);   *United States v. Shuman,* 902 F.2d 873, 876 (11th Cir.1990).   First, we review de novo the decision as to whether the guidelines adequately consider a particular factor.  *Id.*  Second, if the factor was not adequately considered, we examine whether consideration of this factor is consistent with the goals of the Sentencing Guidelines.  *Id.*  Finally, we review the departure for reasonableness.  *Id.*

We note ostensible disagreement among panels in this circuit regarding the second step of the departure analysis.   *Compare United States v. Shuman,* 902 F.2d 873, 876 (11th Cir.1990), *with United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991). Under the *Shuman* line of cases, the second step involves an evaluation of whether, if adequate consideration was not given to the factor, consideration of it is consistent with the goals of the guidelines.  902 F.2d at 876 (citing *United States v. Campbell,* 878 F.2d 164, 165 (5th Cir.1989)).  Under the *Weaver* line of cases, the second step involves an inquiry into whether there exists factual support for the departure (reversing only for clear error).  920 F.2d at 1573 (citing *United States v. Diaz-Villafane,* 874 F.2d 43, 49-50 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)).

Panels of this court do not possess the power to disregard precedent from prior panel decisions. *Bonner v. City of Prichard,* 661 F.2d 1206, 1210 (11th Cir.1981) (en banc). When there is ostensibly inconsistent precedent, we " "must resort to common sense and reason' to determine the appropriate rule of law." *Dorse v. Armstrong World Industries,* 798 F.2d 1372, 1376 (11th Cir.1986) (quoting *United States v. Hobson,* 672 F.2d 825, 827 (11th Cir.1982); *Georgia Association of Retarded Citizens,* 855 F.2d 794, 797-98 (11th Cir.1988). The most favored means of resolving ostensibly inconsistent panel decisions is to interpret them consistently by identifying the common thread tying them together. *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993) ("[T]he most favored means of resolving an inconsistency in circuit precedent is to determine that the inconsistency is more apparent than real.").

These two lines of cases do not represent diametrically opposed rules, but rather, refinements of the same general process. A court should evaluate whether the departure is consistent with the goals of the guidelines, whether as part of the determination that the Commission adequately considered a factor, or as a second step. Likewise, we could not even entertain an argument that the Commission failed to adequately consider a particular circumstance if there exists no factual predicate for that circumstance. Accordingly, we believe the ostensible inconsistency between these two lines of cases is more apparent than real. We apply both rules as a matter of common sense and practicality.

The government argues that the district court erred in

granting the seven-level downward departure. It contends that the Commission adequately considered a defendant who is also an attorney and whose position as an attorney aids in his or her commission of the offense. In particular, it argues that Miller's status as an attorney was incorporated into the guidelines through the § 3B1.3 upward adjustment for an abuse of a position of public or private trust or the use of a special skill in facilitating, committing, or concealing the offense.

By contrast, Miller argues that the Commission failed to consider the impact of U.S.S.G. § 2S1.2(a) on an attorney who derives knowledge of the source of the property through a legitimate attorney-client relationship. Miller's argument is essentially as follows. The original version of 18 U.S.C. § 1957, passed in 1986, did not include any ameliorating provision relating to legitimate attorney-client relationships notwithstanding its presence in early versions of the bill.[4] When Congress amended the statute in 1988, however, the exemption phrase now found in § 1957(f)(1) appeared: "[T]he term "monetary transaction' ... does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution."

Sentences for violations of § 1957 are meted out pursuant to U.S.S.G. § 2S1.2. While conviction for § 1957 does not require knowledge that the property is from a "specified unlawful

---

[4]The provision remained in the Omnibus bill which passed the House on September 11 and October 8, 1986. *See* 1985-1986 Cong. Index (CCH) 35,101-102. It was dropped from the bill in conference, however, and did not appear in the Money Laundering Control Act which was signed into law as part of Pub.L. 99-570.

activity,"[5] it does require that the defendant knew that the funds were "criminally derived property." [6] Section 2S1.2 became effective on November 1, 1987, shortly after the original (1986) version of § 1957 was enacted. It has not been amended to reflect the exemption provision added in 1988.[7] Thus, Miller argues, the Commission did not consider the effect that knowledge gained through a legitimate attorney-client relationship would have on sentencing.

Although the parties frame a novel issue, we decline to decide this question on the record before us because the district court made insufficient factual findings to support its legal conclusions. We recently set forth guidelines for district courts in granting downward departures:

> A district court granting a downward departure from the applicable guidelines should articulate the specific mitigating circumstances upon which it relies and the reasons these circumstances are of a kind, or to a degree, not adequately taken into consideration by the sentencing commission.

*United States v. Baker,* 19 F.3d 605, 616 (11th Cir.1994). As we

---

[5]*See supra* note 1.

[6]Indeed, the requirement that the defendant had knowledge that the funds were criminally derived property is one of the reasons why the base offense level (17) for a § 1957 offense is so high: "The offense levels are higher than in § 2S1.3 because of the higher statutory maximum and the added element of knowing that the funds were criminally derived property." U.S.S.G. § 2S1.2 comment. (backg'd).

[7]The Commission promulgated two clerical amendments in subsequent years, but they do not affect Miller's argument. As of November 1, 1989, the Commission amended the statute to correct minor clerical errors. *See* Federal Sentencing Guidelines Manual, Appendix C, amendment 215. As of November 1, 1991, the Commission added U.S.S.G. § 2S1.2(c) to set forth fines for organizations. *See* Federal Sentencing Guidelines Manual, Appendix C, amendment 422.

have made clear, departures pursuant to § 5K2.0 of the Sentencing Guidelines and 18 U.S.C. § 3553(b) are reserved for unusual cases which differ significantly from the normal or "heartland" conduct in the commission of the crime. *United States v. Gonzalez-Lopez*, 911 F.2d 542, 549 (11th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991). Indeed, the Sentencing Commission anticipated that cases warranting departure would be rare. U.S.S.G. Chap. 1, part A, § 4(b); *United States v. Godfrey,* 22 F.3d 1048, 1053 (11th Cir.1994). Where the grounds for a departure are not otherwise clear, the district court should address the four factors relevant to its decision to depart downward.

In this case, concluding that the district court's analysis was inadequate, we remand with instructions for the district court to make explicit findings of fact with respect to the circumstances warranting a downward departure, to state its reasoning as to whether the guidelines adequately consider such circumstances, to state its reasoning as to whether treatment of such circumstances as grounds for downward departure is consistent with the goals of the sentencing guidelines, and finally, if the district court's analysis indicates that departure is appropriate, to state reasons for the extent of the departure.

With respect to a possible departure because of Miller's assertion that he gained his knowledge that the funds were criminally derived through a legitimate attorney-client relationship, we note that Miller has the burden of proving, *inter alia,* that an attorney-client relationship did exist at specific,

relevant times, and that such relationship was legitimate. [8] *See United States v. Wilson,* 884 F.2d 1355, 1356 (11th Cir.1989) ("The guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level and the defendant has the burden of proving the applicability of guideline sections which would reduce the offense level."); *United States v. Taxacher,* 902 F.2d 867, 873 n. 9 (11th Cir.1990) (same). It may also be relevant whether the $42,133 was a legal fee or, if it was not, whether it bore some other specific relationship to a legitimate attorney-client relationship.[9]

Accordingly, we vacate Miller's sentence and remand for resentencing.[10]

VACATED and REMANDED.

. . . . .

---

[8]The instant, very limited record is unclear as to the legitimacy of the apparent attorney-client relationship, including the extent of Miller's knowledge of Ochoa's illegal activities and any possible complicity. Miller has the burden of demonstrating legitimacy and, to this end, further development of the record may be necessary if Miller is to satisfy his burden. Obviously, if the attorney-client relationship was not legitimate, any departure would not be consistent with the goals of the guidelines.

[9]On remand, the district court should consider whether Miller's guilty plea is relevant to the issue of the relationship between the $42,133 and the legal representation. *See* 18 U.S.C. § 1957(f)(1) ("The term "monetary transaction' ... does not include any transaction necessary to preserve a person's right to representation as guaranteed by the Sixth Amendment to the Constitution.").

[10]Of course, the district court should make such other findings and analyses as are appropriate, in addition to those discussed in this opinion.

We reject Miller's alternative argument in support of the district court's sentence, namely, that the court erred in increasing the Base Offense Level by seven levels.