United States Court of Appeals,

Eleventh Circuit.

No. 94-9155.

UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,

v.

John D. HATNEY, Jr., Defendant-Appellant, Cross-Appellee.

April 15, 1996.

Appeals from the United States District Court for the Southern District of Georgia. (No. CR194-023), Dudley H. Bowen, Jr., Judge.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

CARNES, Circuit Judge:

This appeal and cross-appeal arise from John D. Hatney's conviction after a jury trial for one count of receiving child pornography through the mails in violation of 18 U.S.C. § 2256, and one count of possessing three or more items of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Hatney appeals only his conviction, raising several grounds, none of which merits discussion.[1] We summarily affirm his conviction. The government cross-appeals Hatney's sentence, raising two issues, both of which do merit discussion. For the reasons discussed below, we vacate Hatney's sentence and remand the case to the district court for resentencing.

---

[1] Hatney's contentions, which we reject without further discussion, are that the district court: (1) abused its discretion in refusing to sever Count I and Count II for separate trials; (2) abused its discretion in admitting certain evidence seized pursuant to a search warrant; (3) abused its discretion in denying a suppression motion based on Hatney's contention that he was entrapped; and (4) erred in refusing to charge the jury on the defense of entrapment.

## I. FACTS AND PROCEDURAL HISTORY

In 1993, in response to an advertisement in a sexually oriented publication, John Hatney requested information from a mail order company called "Crystal's Video" regarding its proclaimed collection of "the freshest, bizarrest, strangest, wildest tapes around." Unknown to Hatney, Crystal's Video was actually a front for a long-running government sting operation targeting child pornographers. The postal inspector in charge of the sting responded to Hatney's letter by sending him a questionnaire listing more than a hundred sexual topics and asking him to specify the ones about which he wanted more information. Hatney requested information about several topics, including the following: "Hidden Camera," "Molestation," "Pre-T," "Teen Erotica," "Young Nudist," and "Youth Studies." The postal inspector then sent Hatney a catalog graphically describing the content of each videotape relating to the topics he had specified. Hatney ordered a videotape from the "Pre-T" category entitled "Schoolboys Sex Orgie" that was described in the catalog as portraying nine and ten-year-old boys engaged in sexual acts with ten and eleven-year-old girls.

In August 1993, the postal inspector executed a controlled delivery to Hatney's residence of the "Schoolboys Sex Orgie" videotape, which had been compiled by the authorities from old child pornography films. Shortly after the videotape was delivered, government agents executed a search warrant at Hatney's residence. Among the items seized were the videotape that had just been delivered as well as several homemade videotapes that appeared

to depict minors engaged in sexual acts.  Hatney admitted he had made some of the videotapes that the government seized.  Four of the young women in three of those homemade videotapes were later identified to have been seventeen years of age when Hatney made the tapes.

The government indicted Hatney on one count of receiving through the United States mail a videotape depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of possessing three or more items depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).  For purposes of both sections of the statute, minor is defined as "any person under the age of eighteen years."  18 U.S.C.A. § 2256(1) (West Supp.1995).  After a jury trial, Hatney was convicted on both counts.  The district court sentenced Hatney to sixty months' incarceration to be followed by three years' supervised release.

## II. DISCUSSION

The government contends that the district court misapplied the United States Sentencing Guidelines in two respects:  (1) by granting a downward departure based upon factors that had already been adequately considered and rejected by the Sentencing Commission;  and (2) by failing to apply a two-point sentence enhancement for obstruction of justice, because of the court's belief that insufficient notice of the allegedly perjurious statements had been provided.

### A. The Downward Departure Issue

Title 18, United States Code, § 3553(b) provides, in

pertinent part:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) *unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines* that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C.A. § 3553(b) (West Supp.1995) (emphasis added). We review a district court's departure from an applicable guideline range *de novo*. *E.g., United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991).

The district court in this case determined that Hatney's adjusted offense level under the sentencing guidelines was 29, with a corresponding imprisonment range of between 89 and 108 months. However, the district court departed from that range and imposed a sentence of only sixty months' incarceration, stating:

> [I]t is my view under the circumstances that the guidelines, even as applied by the court, are still too harsh in response to this man's conduct. Accordingly, and for the reasons I have stated and given in my narrative, I will depart from the sentencing range called for by the guidelines....

The reasons for departure given by the district court in its narrative related to the degree of victimization of the minors in the videotapes. The court explained:

> I see there are some victims here. The question that remains in this analysis ... is the extent or the degree to which these people were victims.
>
> The victims with respect to the tape that was delivered by the Postal Service are victims no more. I can't remember whether it was made in the '50's or the early '60's, but whoever those performers were in that unfortunate video tape[,] they are now in middle age according to some estimating, if they are in life.

> The victims as such that I would consider would have to be the three subjects or ... models on the video recordings that Mr. Hatney made in his studio. Mr. Hatney is a disarmingly capable person.... However, ... there is also the element of corresponding seaminess on the victim side of this case as well.
>
> I don't know whether I will take it to the same level of corresponding disgust or revulsion, but it must be noted that the victims, the girls themselves, went to Mr. Hatney for the purpose of having suggestive photographs made.
>
> In one instance, ... one of the subjects readily, willingly and according to my review of the tape, which I was required by my duty as a judge to watch, enthusiastically engaged in [an] extended and continued act of sexual intercourse with ... Mr. Hatney's youthful roommate.... But there is no welling of a great deal of concern and sympathy for the lost innocence of some of these victims that we have seen. They were not encouraged beyond the minimum that was necessary to get them to remove their underclothing so that [their] own objective could be furthered and that is to provide suggestive photographs for their intended recipients[,] whoever that might have been.
>
> We do not have here the typical picture of debauchery of innocent young people that is seen in the usual or expected scene of child pornography.

Our first task in reviewing a district court's departure from the applicable guideline range is to determine whether the factors relied upon by the district court for departure were adequately considered by the Sentencing Commission in its formulation of the guidelines. *E.g., United States v. Mogel,* 956 F.2d 1555, 1557 (11th Cir.), *cert. denied,* 506 U.S. 857, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992). If they were adequately considered and either rejected or factored in, the district court may not rely on those factors to depart from the applicable guideline sentencing range. *E.g., Williams v. United States,* 503 U.S. 193, 198-202, 112 S.Ct. 1112, 1118-20, 117 L.Ed.2d 341 (1992). If we determine that the factors relied upon by the district court were *not* adequately considered by the Sentencing Commission, then we must determine whether those

factors are consistent with the goals of the guidelines. *United States v. Godfrey,* 22 F.3d 1048, 1053 (11th Cir.1994). The final step, if we get that far, is to determine whether the extent of the departure is reasonable. *Id.* In this case we need not go past the first step.

The district court erred in departing down based on the "corresponding seaminess" on the part of the teenage victims, because that is not a permissible basis for departure under the sentencing guidelines. Section 5K2.10 of the sentencing guidelines, which falls under the subheading "Other Grounds for Departure," provides for a downward departure "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior." U.S.S.G. § 5K2.10 (Nov. 1993). The section further clarifies this departure as follows:

> Victim misconduct ordinarily would not be sufficient to warrant application of this provision in the context of offenses under Chapter Two, Part A.3 (Criminal Sexual Abuse). In addition, this provision usually would not be relevant in the context of non-violent offenses. There may, however, be unusual circumstances in which substantial victim misconduct would warrant a reduced penalty in the case of a non-violent offense. For example, an extended course of provocation and harassment might lead a defendant to steal or destroy property in retaliation.

U.S.S.G. § 5K2.10 (Nov. 1993).

The existence of § 5K2.10 establishes that the Sentencing Commission considered but rejected authorizing a downward departure under circumstances involving a victim's wrongful conduct related to nonviolent offenses unless the victim has engaged in an "extended course of provocation and harassment" or has engaged in other "substantial victim misconduct." The young victims' behavior in this case cannot be considered "substantial" misconduct, of the

type referred to in the guideline; they did not provoke or harass Hatney into making the videotapes. In adopting the magistrate judge's report and recommendation, the district court found as a fact that Hatney supplied the underage girls with alcohol, and it was after they began to feel its effects that he persuaded them to remove their underclothing. Moreover, although the girls had each requested Hatney to take still photographs of them, none of them knew that Hatney had strategically placed a video camera behind them to videotape their private parts as they posed for the still shots. These young girls certainly could not have provoked or harassed Hatney into making a videotape that they did not even know was being made. Therefore, their behavior cannot be the basis for a downward departure.[2]

---

[2]The government did not contest, in either the district court or before this Court, the district court's conclusion that the young children in the videotape Hatney received through the mail "are victims no more," because they have long since attained the age of majority. Because the issue was not raised by the government, we do not decide it. *But see* S.Rep. No. 438, 95th Cong., 1st Sess. 9 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 46:

> Of deep concern to the Committee is the effect of child pornography ... on the children who become involved.... Such encounters cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future.... Even more tragic, however, is the fact that many adults who were molested as children tend to become child molesters themselves, thus continuing the vicious cycle.

*See also New York v. Ferber,* 458 U.S. 747, 758 n. 9, 102 S.Ct. 3348, 3355 n. 9, 73 L.Ed.2d 1113 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults."); *id.* at 759 n. 10, 102 S.Ct. at 3355 n. 10 ("Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has

B. The Obstruction of Justice Enhancement Issue

Sentencing Guideline § 3C1.1 states in full: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (Nov. 1993). The Probation Department recommended in Hatney's PSI that he receive an enhancement on each count for obstruction of justice because of false testimony that he gave at his pretrial hearing and at trial.

The district court refused to enhance Hatney's offense level for obstruction of justice "without a statement of a charge of that which was specifically false and conceived by him to obstruct justice." The district court described *United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), as requiring that the prospect of an enhancement be "crafted in a way so as to provide notice and an opportunity for the defendant to be heard by the Court." Determining that notice was lacking in this case, the district court refused to enhance for obstruction of justice.

Nowhere in its *Dunnigan* opinion does the Supreme Court hold that a defendant must receive advance notice, much less written advance notice, of the specific statements alleged to have been perjurious before an obstruction of justice enhancement can be applied. We need not decide whether *Dunnigan* should be extended in such a fashion, because even if written notice as to the specific

posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography." (quoting Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act,* 17 Wake Forest L.Rev. 535, 545 (1981)).

perjurious statements were required, Hatney received such notice in the PSI. The PSI gave the following examples of Hatney's perjurious statements:

> During the defendant's trial testimony, he ... denied that he was in search of any type of child pornography. However, the list of materials that was sent to the defendant through the undercover operation contained statements indicating that the materials contained graphic sexual material. Hatney was also provided with a list of available videotapes. Descriptions of the videotapes indicated which tapes contained adults engaged in sexual activity and which videotapes contained minors engaged in sexual activity.

> During the defendant's trial testimony, he also denied knowledge that the minor female participants in the three videotapes identified in count two of the Indictment were under the age of 18. Trial testimony by the minors indicated that the defendant was advised by two of the minors that they were 17 years old. The third minor testified that the defendant had picked her up from high school and should have been aware of her age.

> ... [T]he defendant provided materially false information to U.S. Magistrate Judge W. Leon Barfield during a pretrial motions hearing. Hatney's testimony during the hearing was in direct conflict with investigating agents' testimony regarding events which occurred during the search of his residence.... The defendant also denied the intent of purchasing child pornography when ordering the videotape from the undercover operation.

The district court apparently agreed with the PSI as to the perjurious nature of at least some of Hatney's statements, because the court made the following statements during the sentencing proceeding:

> I have no doubt whatsoever that Mr. Hatney made a lot of false statements during his testimony. Mr. Hatney, in my view, before that jury has proven himself to be a liar and a very manipulative person....

> ....

> Mr. Hatney denied making any manipulations of the video camera so as to obtain a better vantage point of the private parts of these girls when obviously the contrary was the case....

....

... Mr. Hatney was, quite simply, a liar and a very manipulative person.

The jury found him to be a liar and a manipulator and found him guilty in that regard.... Mr. Hatney's credibility is virtually non-existent in this forum because of the attempt toward deceiving the jury that he made....

We hold that, even if advance written notice of the specific statements alleged to have been perjurious is required, the PSI provided such notice in this case.

*Dunnigan* does state that where a defendant objects to a sentence enhancement based upon his trial testimony, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." 507 U.S. at 95, 113 S.Ct. at 1117. This Court has held that we may affirm a district court's enhancement even absent particularized findings regarding the defendant's perjury so long as the district court found in general that the defendant's testimony was perjurious as to material matters and the record supports that finding. *United States v. Dobbs,* 11 F.3d 152, 155 (11th Cir.1994). However, because the district court mistakenly held that it lacked the power to enhance Hatney's sentence due to a perceived lack of notice, and because this case is being remanded for resentencing on other grounds, anyway, we will give the district court the opportunity to decide in the first instance whether an obstruction of justice enhancement is warranted in this case. It can also make any appropriate additional findings related to that issue.

## III. CONCLUSION

Hatney's conviction for Counts I and II is AFFIRMED. Hatney's sentence is VACATED and the case is REMANDED to the district court for resentencing consistent with this opinion.